Argued and submitted August 25, 1982, reversed and remanded
with instructions February 16, respondent's reconsideration denied April 1,
petition for review allowed May 3, 1983 (294 Or 792)
See 296 Or 79, 672 P2d 344 (1983)
Petitioner's reconsideration of the award of attorney fees
is granted, award increased by $450 by order October 26,
petition for review denied December 20, 1983 (296 Or 237)

## In the Matter of the Compensation of Samuel Wallace, Claimant.

### WALLACE,
*Petitioner,*

*v.*

### GREEN THUMB, INC.,
*Respondent.*

(WCB No. 81-02577; CA A24243)

658 P2d 560

Charles S. Tauman, Portland, argued the cause for petitioner. With him on the briefs was Willner, Bennett, Bobbitt, Hartman & Tauman, P.C., Portland.

Emil R. Berg, Portland, argued the cause for respondent. With him on the brief was Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

WARREN, J.

## WARREN, J.

Claimant appeals an order of the Workers' Compensation Board affirming the self-insured employer's denial of his claim for benefits. We reverse.

The facts are undisputed. At the time of the injury, claimant was 87 years old and employed as a watchman and caretaker of a rural fire station utilized by a volunteer fire department. His duties consisted of assistance in a "Meals on Wheels" program, security for the fire station, maintenance of the grounds, snow removal, maintenance of the fire trucks (insuring that the gas tanks were full and that the batteries were charged) and response to fire alarms by opening the station doors and starting the fire trucks in preparation for the arrival of the firefighters. He was on call 24 hours a day. Because of the nature of the job, employer required claimant to live on the fire station premises. He lived in a trailer that he had owned before beginning the job. Employer moved the trailer to the fire station premises and provided free utilities. Claimant was injured while preparing dinner in his trailer when his butane stove exploded.

This case presents an issue of first impression in Oregon: the compensability of injuries that arise out of personal comfort activities of workers who are required to live on the work premises.

ORS 656.005(8)(a) defines a "compensable injury" as "an accidental injury * * * arising out of and in the course of employment * * *." In *Rogers v. SAIF*, 289 Or 633, 616 P2d 485 (1980), the court rejected the mechanistic two-stage method of analysis by which "arising out of" and "in the course of" were treated as separate tests, both of which had to be met for an injury to be compensable. Instead, the court adopted a "unitary 'work-connection' approach" and defined the ultimate inquiry as "[I]s the relationship between the injury and the employment sufficient that the injury should be compensable?" 289 Or at 642. The court directed that the inquiry be made in light of the policy behind the Workers' Compensation Act:

" '[T]he financial protection of the worker and his/her family from poverty due to injury incurred in production,

regardless of fault, as an inherent cost of the product to the consumer.'" 289 Or at 643, quoting *Allen v. SAIF*, 29 Or App 631, 633, 564 P2d 1086, *rev den* 280 Or 1 (1977).

The court made clear that, by adopting its "work-connection" approach, it was not rejecting the specialized concepts that have been developed to analyze the relationship between the injury and the employment, *e.g.,* personal comfort, special errand and lunch hour cases.

"In adopting a unitary 'work-connection' approach in place of the customary mechanistic two-stage method of analysis, it is not our intention to substantially change fundamental Workers' Compensation law. [Footnote omitted.] If the injury has sufficient work relationship, then it arises out of and in the course of employment and the statute is satisfied. Existing law regarding proximity, causation, risk, economic benefit, and all other concepts which are useful in determining work relationship remain applicable. * * *" 289 Or at 643.

Although no Oregon cases have concerned injuries arising out of personal comfort activities of resident employees,[1] we have held that injuries arising out of certain personal comfort activities of employees having a fixed time and place for work are compensable. *Halfman v. SAIF*, 49 Or App 23, 618 P2d 1294 (1980) (employee injured crossing street to find restroom and something to drink during coffee break); *Olsen v. SAIF*, 29 Or App 235, 562 P2d 1234, 30 Or App 109, 566 P2d 1202, *rev den* 280 Or 1 (1977) (employee injured while repairing co-worker's bicycle during lunch hour). Further, in *Clark v. U.S. Plywood*, 288 Or 255, 605 P2d 265 (1980), the Supreme Court formulated a specialized test to determine the compensability of injuries from personal comfort activities that occur on the work premises.

*Clark* involved an employee who was killed while retrieving his lunch, that he had left to warm atop a hot glue press. The court defined personal comfort activities as activities incidental to but not directly involved in the performance of the appointed task, such as preparing for work, going to and from the work area, eating, resting,

---

[1] We use the term "resident employee" to mean employees who are required to live on the job premises either by their contract of employment or by the nature of their duties.

going to the toilet, getting fresh air, quenching thirst and engaging in recreational activities during lunch or rest periods. 288 Or at 260-61. The court formulated a test to determine the compensability of injuries arising out of on-premises personal comfort activities and explained its rationale as follows:

> "We believe that the compensability of on-premises injuries sustained while engaged in activities for the personal comfort of the employee can best be determined by a test which asks: Was the conduct expressly or impliedly allowed by the employer?

> "Clearly, conduct which an employer expressly authorizes and which leads to the injury of an employee should be compensated whether it occurs in a directly related work activity or in conduct incidental to the employment. Similarly, where an employer impliedly allows conduct, compensation should be provided for injuries sustained in that activity. For example, where an employer acquiesces in a course of on-premises conduct, compensation is payable for injuries which might be sustained from that activity. Acquiescence could be shown by showing common practice or custom in the work place.

> "This test squares with the well established requirement that compensation lies for all activities related to the employment if it carries out the employer's purposes or advances the employer's interests directly or indirectly. * * *" 288 Or at 266-67.

Many jurisdictions, including Oregon, award compensation for injuries from on-premises personal comfort activities, whether they occur during fixed working hours or during unpaid breaks. *See Halfman v. SAIF, supra; Olsen v. SAIF, supra;* 1A Larson, Workers' Compensation Law, § 21 (1982). Some jurisdictions to award compensation for on-premises injuries to resident employees that occur outside of the employee's working hours when not on call. 1A Larson, *supra,* § 24.30; *see, e.g., Allen v. D.D. Skousen Const. Co.,* 55 N.M. 1, 225 P2d 452 (1950) (employee injured while cooking breakfast). The great majority of jurisdictions award compensation for injuries from personal comfort activities of resident employees who are continuously on the premises and continuously on call. 1A Larson, *supra,* § 24.21; *see, e.g., Bourn v. James,* 191 Neb 635, 216 NW2d 739 (1974) (ranch hand injured in fire while sleeping

in trailer provided by employer); *Leak v. Rockland State School,* 65 AD2d 834, 409 NYS2d 828 (1978) (hospital employee injured when fleeing robbers who entered a building in which he was socializing with a co-employee); *Texas Employers' Ins. Ass'n. v. Prasek,* 569 SW2d 545 (Tex Civ App 1978) (employee choked to death eating dinner in trailer provided by employer). Larson notes that, although the general rule is that injuries from on-premises personal comfort activities of resident employees on continuous call are compensable, courts must draw the line short of unlimited coverage of everything that happens on the premises. 1A Larson, *supra,* §§ 24.21, 24.22.

■ We hold that the *Clark* test applies to injuries from on-premises personal comfort activities of resident employees who are on call continuously. An injury is compensable if the employer has expressly or impliedly allowed the conduct in question. The court's rationale for formulating the *Clark* test for nonresident employees with fixed working hours, quoted above, is even stronger when applied to resident employees on 24-hour call. Personal comfort activities of the latter employees clearly advance the employer's interest, because the nature of the employment *requires* that the activities, eating, drinking, sleeping, recreation, and the like, take place at the work site. Further, the *Clark* test squares with the general rule of compensation for injuries from on-premises personal comfort activities of resident employees on call continuously. Lastly, the *Clark* test does not allow for unlimited coverage of everything that happens on the premises.

■ Claimant's injury is compensable. His duties required that he live on the job premises. He was continuously on call. Employer had to know that he would prepare his meals on the premises. By requiring that he live on the premises and by failing to provide food service for him, employer not only allowed but virtually *required* that claimant prepare his own meals.

Employer argues that the rules for resident employees should not apply to claimant, because he lived in his own trailer and was, therefore, not injured on the work premises. We find this argument unpersuasive. The nature of the employment mandated that claimant have shelter on

the job premises. Because he lived in his own trailer after employer moved it to the job site, employer was not required to provide him shelter or cooking facilities. When an employer requires a claimant to live on the job site and reaps the benefits of the claimant's use of his own trailer, for us to engage in the fiction that the employee was not injured on the job premises and, therefore, deny him compensation would be a draconian result, incompatible with the policy behind the Act.

Employer and the Board relied on *Otto v. Moak Chevrolet,* 36 Or App 149, 583 P2d 594 (1978), *rev den* 285 Or 319 (1979), to support their conclusion that claimant's injury is noncompensable. In *Otto,* we denied compensation for a bookkeeper who had strained her lower back when pulling up her clothes after going to the toilet on the job premises. We held that the injury did not "arise out of" the employment, because "it is very likely the back condition experienced by claimant could have occurred when she pulled up her underwear after using the toilet facilities at some other place." 36 Or App at 154. Here, employer and the Board both concluded that claimant's injury was not compensable, because he likely would have been living and cooking in his trailer and the injury would have occurred even if he had not been required to live on the job premises.

We conclude that *Otto* has no continued validity. At the time we decided it, we followed the previous Supreme Court opinions setting out the two-step analysis for determining compensability. After *Rogers* and *Clark,* however, *Otto* is no longer an accurate statement of the law. In *Rogers,* the court used *Otto* as an example of the mechanistic two-step analysis that it rejected. 289 Or at 641-42.

Reversed and remanded with instructions to accept the claim.