Argued and submitted September 24, 1993, reversed and remanded on petition; affirmed on cross-petition August 10, petition for review denied December 13, 1994 (320 Or 543)

In the Matter of the Compensation of
Meridee A. Kaiel, Claimant.

Meridee A. KAIEL,
*Petitioner - Cross-Respondent,*

*v.*

NCE CULTURAL HOMESTAY INSTITUTE,
*Respondent - Cross-Petitioner,*

*and*

SAIF CORPORATION,
*Respondent.*

(WCB 91-03467, 90-12953, 90-20519; CA A77214)

879 P2d 1319

Robert Wollheim argued the cause for petitioner - cross-respondent. With him on the briefs was Welch, Bruun, Green & Wollheim.

Margaret H. Leek Leiberan argued the cause for respondent - cross-petitioner. With her on the brief were Wallace & Klor, P.C., and Leiberan & Gazeley.

Steve Cotton, Special Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Claimant seeks review of a final order of the Workers' Compensation Board concluding that her injury was noncompensable. On cross-petition, noncomplying employer seeks review of the Board's conclusion that claimant was a subject worker. We reverse on the petition and affirm on the cross-petition.

The facts of the case, as found by the referee and adopted by the Board, are not in dispute. Noncomplying employer (NCE), Cultural Homestay Institute, is an educational exchange organization that contracts with Japanese schools to bring students to the United States for one- to eight-week educational programs. After NCE contracts with a Japanese school to provide a program in a specific city, NCE's area administrator enters into a contract with a "teacher-coordinator" (TC) who agrees to be responsible for conducting that specific program.

In April, 1989, NCE contracted with claimant and Sabin to conduct jointly a three-week program in August in Portland for 15 junior high school students. During the regular school year, claimant works as a second grade teacher's assistant. She has never taught English before. Claimant signed the same contract signed by all of NCE's approximately 1,000 TCs. The contract requires that the TCs recruit host families for the students and their escort, locate a study center for teaching English and prepare an itinerary for the entire program. Claimant was paid $325 per week for three weeks for teaching English and supervising her student group, plus $50 for each host family that she recruited.

NCE requires that the itinerary prepared by the TCs include a number of specific activities, including English instruction three hours per day, four days per week, full-day excursions, half-day outings, cultural exchanges and sports afternoons. The itinerary is prepared based on a budget of $28 per student allocated by NCE. Each activity must conform to NCE's general specifications, as discussed below. NCE also requires that the TCs prepare an itinerary of all optional activities arranged in addition to those required under the contract. The optional activities are not part of the budget. Although NCE does not approve or disapprove any particular

item on an itinerary, it does certify that all of the events specifically required by the contract are included.

Claimant and Sabin strictly followed the itinerary that they had prepared for their group. On August 18, 1989, claimant and Sabin took the students roller-skating at Oaks Park for a scheduled "sports afternoon." The students and the TCs skated, at NCE's expense, from 1:00 to 2:30 p.m. From 2:30 to 3:30 p.m., the scheduled departure time, the students were free to do whatever they wanted, at their own expense, pursuant to the optional activities list. The list included Oaks Park's carnival rides and arcade games. Claimant, who was required to be with the students at all times while at Oaks Park, rode the bumper cars at her own expense with eight or nine of her students. The third time that she went on the ride, she fractured her right ring finger. Because of complications, her medical bills for the injury total $26,844.

After a contested case hearing, the referee concluded that claimant was an employee of NCE and that she was acting within the course and scope of her employment when she was injured. On review, the Board agreed that claimant was a subject worker, but concluded that her injury did not arise out of and in the course of her employment and, thus, was not compensable.[1] On reconsideration, the Board adhered to its order.

■       We first address NCE's argument on the cross-petition that the Board erred in concluding that claimant was a subject worker rather than an independent contractor. Under *former* ORS 656.005(27) (renumbered ORS 656.005-(28) in 1990), a worker is one who is "subject to the direction and control of an employer." An employer is one who has "the right to direct and control the services of any person." ORS 656.005(13). To determine the relationship between the parties, the Board must first apply the "right to control" test. *Woody v. Waibel*, 276 Or 189, 196, 554 P2d 492 (1976). If the relationship cannot be determined under that test, it is permissible to apply the "relative nature of the work" test. *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614,

---

[1] The Board also reversed the referee's award of attorney fees to claimant's counsel. Claimant does not seek review of that part of the order.

622 n 6, 872 P2d 1 (1994) (citing *Woody v. Waibel, supra,* 276 Or at 197-98).[2] Here, the Board held that the traditional right to control test was inconclusive. It then applied the relative nature of the work test and concluded that claimant was a worker. SAIF argues that because the right to control test conclusively establishes that claimant was not a worker, the Board erred when it considered the relative nature of the work test.

When the basic facts are not in dispute, as is the case here, the question of employee or independent contractor status is one of law. *Woody v. Waibel, supra,* 276 Or at 192 n 3. Similarly, whether a right to control exists under the facts as found is also a question of law for the court. *HDG Enterprises v. Natl. Council on Comp. Ins.,* 121 Or App 513, 318, 856 P2d 1037 (1993). Under the common law right to control test, the principal factors to be examined are: (1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Castle Homes, Inc. v. Whaite,* 95 Or App 269, 272, 769 P2d 215 (1989).

As to the first factor, DIF found that NCE procured the contract with the Japanese schools and determined the total number and age range of the students composing each group. NCE specified the type of host family that claimant could recruit[3] and specified the number of families that had to be signed up by certain dates. NCE required that English classes be taught from a study center to be located by claimant but paid for by NCE. Although claimant used her own ideas in preparing the itinerary, NCE imposed numerous limitations on the schedule of activities.[4] Claimant was required to

---

[2] Because the facts of this case arose before October, 1989, we do not consider the 1989 statutory amendments at issue in *S-W Floor Cover Shop v. Natl. Council on Comp. Ins., supra,* 318 Or at 622.

[3] NCE required the "families" to consist of two related people, one of whom is a native English speaker, who speak English as their primary language while the student is in the home.

[4] Claimant had to teach English three hours a day, four days a week. She had to provide one full-day excursion per week, the first of which had to be to the nearest major city. Only one of the full-day excursions could last for nine hours instead of seven. The half-day outings had to be away from the study center and had to last for three hours each. The cultural exchanges were for three hours and had to include American and foreign students. The sports afternoons were also limited to three hours each.

submit a finalized budget that accounted for the $28 per student. NCE advised claimant and other TCs how to dress for teaching. Those facts represent direct evidence of NCE's right to control.

■ DIF also made findings that indicate NCE lacked a right to control. Claimant could recruit any host family that met NCE's specifications, and NCE did not approve or disapprove of any family that met those specifications. Similarly, claimant was free to design the itinerary, which was reviewed by NCE only to verify that it included all the required activities. Claimant paid for all costs associated with recruiting the host families and locating the study center and all expenses above those budgeted to implement the itinerary. Finally, the contract between NCE and claimant stated that claimant performed work under the contract as an independent contractor. While the parties' understanding of their relationship is not controlling, in a close case, it may swing the balance toward status as an independent contractor. *Woody v. Waibel, supra,* 276 Or at 198-99; *Henn v. SAIF,* 60 Or App 587, 592, 654 P2d 1129 (1982), *rev den* 294 Or 536 (1983).

■ As to the second factor, method of payment, NCE paid claimant $325 per week plus $50 for each host family that she recruited. Payment was made in three lump sums. Payment by a unit of time is strong evidence of employee status. 1B Larson, *Workmen's Compensation Law* 8-107, § 44.33(a) (1993). However, when payment is by quantity, the method of payment factor becomes neutral. *Henn v. SAIF, supra,* 60 Or App at 592. Because claimant was paid both by time and by quantity, this factor is inconclusive.

The third factor, the furnishing of equipment, is neutral. NCE paid for the use of the study center, provided a *Modern Homestay English* textbook to claimant and to each student, and budgeted for classroom expenses. Claimant was not required to use the provided textbook, although she chose to do so. Claimant used her own phone and car, without reimbursement from NCE, to locate the host families and to locate the study center. As to the final factor, the contract indicates that NCE did not have the right to fire claimant. This factor indicates independent contractor status.

■      Based on the evidence, we hold that the Board correctly concluded that the right to control test was not determinative of the relationship between claimant and NCE. Consequently, the Board acted properly by applying the relative nature of the work test. NCE does not argue that the Board erred in its application of that test. Accordingly, the Board did not err in concluding that claimant was a subject worker.

■      Claimant assigns error to the Board's conclusion that she was injured while engaged in a recreational activity primarily for her personal pleasure and that, as a consequence, her injury is not compensable. An accidental injury is compensable if it arises out of and in the course of employment. ORS 656.005(7)(a). Under ORS 656.005(7)(b)(B), however, an accidental injury is not compensable if it is incurred during "any recreational or social activities primarily for the worker's personal pleasure."[5] In its order, the Board concluded that claimant's injury was not compensable because "riding the bumper cars did not have a close work nexus and was performed 'primarily' for claimant's own pleasure."

We conclude that the Board's legal conclusion that claimant's injury was noncompensable under ORS 656.005-(7)(b)(B) is not supported by its findings. Central to the Board's analysis is its finding that the activity was an optional part of the program. In deciding that the activity was not sufficiently work-connected, the Board considered as critical the fact that this was an optional, as opposed to a budgeted, activity. We do not believe that this distinction is as determinative as the Board apparently believed. As the Board found, NCE required claimant to list all budgeted activities on the "CHI Itinerary form" and all optional activities on the "CHI Optional Activity form." Accordingly, NCE knew that the students would be participating in the optional activities while at the park and under claimant's supervision. Although the activities were "optional" for the students, claimant's continuing role as a supervisor was not optional. As the Board found, NCE required claimant to be with the students *at all times while at the park* and that her primary function while

---

[5] We express no opinion as to whether the phrase "recreational activities," as used in ORS 656.005(7)(b)(B), includes activities that are part of a worker's regular employment.

there was to supervise those students. Claimant had those responsibilities regardless of whether the students were participating in a budgeted or optional activity. Furthermore, because NCE did not question claimant's ability to perform her supervisory duties while she participated in the budgeted activity, there is no reason to assume that she could not similarly perform those duties while she participated in the optional activities. Consequently, we see no meaningful distinction between claimant's supervisory role during the roller-skating activity and during other "optional" carnival rides.

The Board also based its conclusion on its finding that claimant had fun on the carnival ride. However, we do not think that whether claimant had fun while participating in the activity should be determinative of whether her injury was related to her work. The proper inquiry under ORS 656.005(7)(b)(B) is, what is the primary purpose of the activity? The fact that a worker derives pleasure *from* a work activity does not necessarily mean that the worker engages in the activity primarily *for* personal pleasure. It would be absurd to make the compensability of an injury turn on whether a worker has fun doing his or her job. Under the Board's analysis, claimant's injury in this case might have been compensable had she testified that she hated carnival rides. We thus conclude that claimant is not precluded by ORS 656.005(7)(b)(B) from establishing a compensable injury.

■ Even though ORS 656.005(7)(b)(B) does not preclude claimant from establishing the compensability of her injury, we must still determine if the injury is compensable under ORS 656.005(7)(a). To do so, we apply the unitary work-connection test. Under that analysis, we consider whether the injury arose out of and whether it was in the course of claimant's employment. These two factors are part of a single inquiry: Is the relationship between the injury and the employment sufficient that the injury should be compensable? *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994); *Rogers v. SAIF*, 289 Or 633, 642, 616 P2d 485 (1980). Both factors must be evaluated to determine work connection. *Norpac Foods, Inc. v. Gilmore, supra*, 318 Or at 366. Neither factor is dispositive, and deficiencies in the

strength of one factor may be made up by the strength of the other.[6] *Phil A. Livesley Co. v. Russ*, 296 Or 25, 672 P2d 337 (1983).

■ We must first examine whether the injury occurred in the course of employment. To do so, we consider the time, place and circumstances of the injury. *Norpac Foods, Inc. v. Gilmore, supra*, 318 Or at 366. Because NCE required that claimant be with the students until the time that they left the park, the injury occurred during work hours. The injury occurred at the amusement park, the general place where claimant was required to be. As discussed above, she was required to supervise the students whether they were engaged in a budgeted or optional activity. She was, in fact, with eight or nine of the students at the time of her injury. We do not think that the fact that she actually participated in the ride with the students was sufficient to take her activity outside the course of her employment. We conclude that claimant's injury occurred in the course of her employment.

■ We must next determine whether the "arising out of" element of the work-connection test is satisfied. This element concerns the causal connection between the injury and the employment. *Norpac Foods, Inc. v. Gilmore, supra*, 318 Or at 366. In assessing this connection, we consider whether what occurred was an anticipated risk of employment. *Henderson v. S.D. Deacon Corp.*, 127 Or App 333, 338, 874 P2d 76 (1994). As explained by Larson, and quoted with approval by the Supreme Court in *Phil A. Livesley Co. v. Russ, supra*, 296 Or at 29-30:

> "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks — i.e., risks having no particular employment or personal character. * * * It is within the third category that

---

[6] The Board concluded that "claimant's finger condition did not arise out of and in the course of her employment." However, despite its reference to the unitary work-connection test, the Board did not apply the Supreme Court's methodology for determining compensability. After ostensibly analyzing the facts under ORS 656.005(7)(b)(B), the Board stated:

> "Moreover, if we analyze claimant's injury under the unitary work-connection test, we are also persuaded that there was not a sufficient benefit to the employer to find a work connection between an injury occurring during this carnival ride and claimant's employment."

most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance." 1 Larson, *supra*, § 7.00 at 3-12.

We conclude that, based on the facts found by the Board, claimant's injury arose out of her employment. NCE's knowledge that the students might be riding the bumper cars while at the park, its requirement that claimant stay with the students and supervise them until they left the park and its acceptance of claimant's participation with the students in another park activity show that claimant's employment put her in a position to be injured.

Claimant's injury arose out of and in the course of her employment and, therefore, was compensable. ORS 656.005(7)(a). The Board erred in reversing the referee's order on the issue of compensability.

Reversed and remanded on petition; affirmed on cross-petition.