Argued and submitted October 11, 2002, affirmed March 6, 2003

In the Matter of the Compensation of
Dwight D. Nichols, Claimant.

LIBERTY NORTHWEST INSURANCE CORPORATION
and Rhythm & Blooms,
*Petitioners,*

*v.*

Dwight D. NICHOLS,
*Respondent.*

00-06244; A115872

64 P3d 1152

David O. Wilson argued the cause and filed the briefs for petitioners.

Mustafa T. Kasubhai argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

While at work, claimant broke his tooth on an employer-supplied snack. He filed a claim for workers' compensation benefits. Employer's insurer denied the claim on the ground that claimant's injury was not sufficiently work related. An administrative law judge (ALJ) disapproved the denial and ordered insurer to accept the claim and provide benefits. The Workers' Compensation Board (board) affirmed. Insurer seeks judicial review, arguing (as it did below) that the injury was not compensable because it resulted from a recreational or social activity. Because the facts are undisputed, we review only for errors of law. ORS 183.482(8). We affirm.

Claimant was a delivery driver for employer, a florist whose central office and warehouse are just north of Eugene. Claimant's job duties included setting up and making deliveries from the warehouse to employer's retail outlets, as well as procuring and delivering supplies. Occasionally, employer would tell claimant to drive to a nearby store, purchase snacks, and bring them back for everyone to eat while working. At other times, an employee at one of employer's retail outlets would provide snacks.

On the day of the injury, claimant was working with other employees in the warehouse setting up the next day's deliveries. At employer's request, and while "on the clock," claimant went to an adjacent house owned by employer, picked up some snacks owned by employer, and divided them among the other workers. Claimant continued to work while eating his snack, a piece of chewy cinnamon candy called a "Hot Tamale." As he was chewing, the candy pulled out a filling, and he cracked his tooth. Claimant immediately received dental care. He later applied for workers' compensation benefits but insurer denied them because the injury "did not arise out of and in the course and scope of [his] employment." Claimant requested a hearing. The ALJ concluded that the injury did occur within the course and scope of the employment.[1] He ordered insurer to accept the claim and pay

---

[1] The ALJ also concluded that, notwithstanding claimant's preexisting tooth decay, the injury was the major contributing cause of the fractured tooth. Insurer does not contest that conclusion.

appropriate benefits. Insurer appealed to the board, which adopted and affirmed the ALJ's order as written.[2]

◼         The compensability of claimant's injury depends on the outcome of a two-step analysis under ORS 656.005(7)(a) and (b). In part, those subsections provide:

"(7)(a)   A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment * * *[.]

"(b)   'Compensable injury' does not include:

"* * * * *

"(B)   Injury incurred while engaging in or performing * * * any recreational or social activities primarily for the worker's personal pleasure[.]"

Subsection (b) "states grounds for exclusion that are *additional* to those that are inherent in the primary definition found in paragraph (7)(a)." *Andrews v. Tektronix, Inc.*, 323 Or 154, 160-61 n 1, 915 P2d 972 (1996) (emphasis in original). Thus, if the injury was incurred during a social or recreational activity, it is *per se* noncompensable; if it was not incurred during a social or recreational activity, it must still pass the "arise out of and in the course of employment" test. *Id.* Before the ALJ, the board, and this court, insurer makes only one argument: Claimant's injury was not compensable because it was "incurred while engaging in or performing * * * [a] recreational or social activit[y] primarily for the worker's personal pleasure." As insurer concisely insists, "Claimant's tooth was fractured * * * by a social Hot Tamale." The board found that claimant's injury did not occur during a social or recreational activity and then proceeded to the second inquiry, concluding that the injury arose out of and in the course of employment.[3] We agree.

_____

[2] Hereafter, any reference to the board's opinion is to the text of the opinion written by the ALJ and adopted by the board.

[3] Insurer contends that the ALJ and the board erred in adopting a rule from Professor Larson's treatise, *Law of Workmen's Compensation*, under which an activity could be compensable even if it was social or recreational. *See* Arthur Larson and Lex K. Larson, 1A *Law of Workmen's Compensation* § 22.00 (1990). We do not read the opinion that way. The opinion stated, "If, *arguendo*, eating candy provided by the employer during office time is social or recreational, I would conclude that Larson's third test was satisfied * * *." That statement shows that the board referred to Larson only hypothetically. Because the board determined that eating candy in this case *was not* a recreational or social activity, it analyzed the issues in the proper sequence and did not rely on Larson.

In concluding that claimant did not incur his injury in a recreational or social activity, the board reasoned:

> "Cases in which the specific question has been considered have included injuries occurring during recreation times, office parties, basketball games during a scheduled break or lunch hour, and even 'horseplay.' The cases all seem to clearly focus upon some intentional recreational or social pursuit. In the instant case, the activity of eating candy was never touted as being recreational, nor as specifically social, either. I view the activity as being more an ordinary part of an average working day such as taking a drink of water or sitting quietly at one's desk for a moment of rest at some time other than a regularly-scheduled break."

Insurer, relying on *Webster's Third New Int'l Dictionary* (unabridged ed 1993), insists that the board misinterpreted the terms "recreational" and "social." "Recreational," it argues, means "of or relating to recreation," and "recreation" is "refreshment of the strength and spirits after toil." *Id.* at 1899. "Social" means "marked by or passed in pleasant companionship with one's friends or associates. * * * [T]aken, enjoyed, or engaged in with friends or for the sake of companionship." *Id.* at 2161.

On the facts of this case, we fail to see how the dictionary definitions help insurer. Claimant's injury did not occur "after toil," and nothing in the record indicates that it was "marked by pleasant companionship" or "for the sake of companionship." Rather, the injury occurred as a result of an activity claimant engaged in *while working*. He was not traveling to or from work, on a break, or at lunch.

That fact points to a more fundamental flaw in insurer's argument. In determining whether claimant was engaged in a recreational or social activity when he was injured, insurer presumes that the "activity" is eating. That presumption is not correct. The relevant activity is *eating while working*. Our only case interpreting the current version of ORS 656.005(7)(b)(B) illustrates that point. In *Kaiel v. NCE Cultural Homestay Institute*, 129 Or App 471, 879 P2d 1319, *rev den*, 320 Or 453 (1994), the claimant was a teacher's assistant hired to supervise a group of summer-school students from Japan and teach them English. The itinerary for

the students included a number of specific activities, including English instruction, cultural exchanges, and outings. On one outing, the students had free time at an amusement park for optional activities at their own expense. They decided to ride bumper cars. The claimant was required to stay with the students at all times. Instead of watching them from outside the ride, she rode the bumper cars herself and, during the ride, fractured a finger. *Id.* at 473-74.

The board, emphasizing that riding bumper cars was an optional activity, concluded that the injury was not compensable because the claimant was "injured while engaged in a recreational activity primarily for her personal pleasure * * *." 129 Or App at 477. We reversed, stating, "[The] claimant's continuing role as a supervisor was not optional." *Id.* The claimant, in other words, was still on the job; she had not stopped working and then started a separate and discrete recreational or social activity. We noted that the claimant continued to perform the duties she was hired to perform (supervising students) as she participated in the "optional" activities. *Id.* at 478. The fact that the claimant chose to engage in recreation while contemporaneously supervising students did not transform supervising students into a recreational activity "primarily for the worker's personal pleasure." ORS 656.005(7)(b)(B). The question that this court addressed was not whether the claimant had been injured by a recreational bumper car; it was whether, at the time of the injury, she was engaged in a recreational activity primarily for her personal pleasure. The answer was no. We concluded that, primarily, she was supervising students; incidentally, she was riding a bumper car at the same time.

■■     Likewise, in the present case, the appropriate question is not whether eating is a recreational or social activity *per se*. Rather, it is whether claimant, at the time of the injury, was engaged in a social or recreational activity primarily for his personal pleasure. Again, the answer is no. Primarily, he was setting up a delivery for his employer. Incidentally, he was eating a piece of candy at the time.

The legislative history of the statute supports our interpretation. The "recreational or social activities" exception was adopted in 1987 in response to *Beneficiaries of*

*McBroom v. Chamber of Commerce*, 77 Or App 700, 713 P2d 1095, *rev den*, 301 Or 240 (1986), the so-called "hot tub" case. A traveling salesman on a business trip died in a hotel hot tub while intoxicated at around 2:00 a.m. We held that his death arose out of and in the course of employment. *Id.* at 702. In response, the legislative assembly enacted the predecessor to ORS 656.005(7)(b)(B). During a work session on the statute, Senator Larry Hill, chair of the Senate Committee on Labor, made the following statement explaining the phrase "recreational or social activities":

> "My feeling on offering this amendment is to indicate that we're not talking about something that the worker may be engaged in which is actually a part or within the scope of employment. For instance, a working lunch in which the worker is eating and may find pleasure in the experience of eating salmon or something and may choke on a salmon bone and therefore incurs a compensable injury.
>
> "What we're trying to get at are those recreational or social activities that are not part of the work, that are performed solely for the worker's personal pleasure. And that would clarify that."

Tape Recording, Senate Committee on Labor, HB 2271, June 8, 1987, Tape 201, Side A (statement of Senator Hill). Thus, the proper focus in Senator Hill's hypothetical is not the fact that eating the lunch is pleasurable but on the fact that the lunch is a working lunch, that is, a lunch that is incidental to an employment activity. It follows that, in determining whether the injury is compensable, the proper question would not be whether eating salmon was an activity undertaken solely for the personal pleasure of the worker. Rather, it would be whether the worker's activity while he happened also to be eating salmon was solely for his personal pleasure.[4] Likewise, the question in this case is whether claimant's activity at the time of the injury was "primarily for his personal pleasure." Substantial evidence supports the board's

---

[4] The original statute excluded social or recreational activities that were "solely for the worker's personal pleasure." ORS 656.005(7)(a)(B) (1987). In 1990, the word "solely" was changed to "primarily." That change does not alter our conclusion that the "activity" the statute refers to is not the particular action that causes the injury (eating), but the activity within which that action occurs (working or not working).

finding that it was not. Even presuming that he derived pleasure from the snack, that pleasure was merely incidental to his primary activity: preparing deliveries.

Having concluded that claimant's injury was not incurred while engaging in or performing a recreational or social activity primarily for his personal pleasure, the board then considered whether his injury arose out of and in the course of employment. ORS 656.005(7)(a). Applying the "unitary approach" in which "arising out of" and "in the course of" are two elements of a single inquiry, *Rogers v. SAIF*, 289 Or 633, 616 P2d 485 (1980), the board concluded that "the activity of eating the candy was within the course and scope of claimant's employment." Insurer did not argue to the board and does not argue to us that the facts underlying this conclusion are not supported by substantial evidence nor that the connection between the facts and the legal conclusion is not supported by substantial reason.

Affirmed.