Argued and submitted March 14, 2014; resubmitted en banc May 6, reversed and remanded June 24, petition for review denied October 9, 2015 (358 Or 70)

In the Matter of the Compensation of
Diane Pohrman, Claimant.

**U.S. BANK,**
*Petitioner,*

*v.*

Diane POHRMAN,
*Respondent.*

Workers' Compensation Board
1101308; A151443

354 P3d 722

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Julene M. Quinn argued the cause for respondent. With her on the brief was Kryger Alexander Carlson PC.

Before Haselton, Chief Judge, and Armstrong, Ortega, Sercombe, Duncan, Nakamoto, Hadlock, Egan, DeVore, Lagesen, Tookey, Garrett, and Flynn, Judges.

EGAN, J.

**EGAN, J.**

Employer, U.S. Bank, denied claimant's workers' compensation claim. The administrative law judge (ALJ) upheld that denial. The Workers' Compensation Board (the board) reversed, determining that claimant's activity was "a regular incident of her employment, and was not the type of 'social' activity that the legislature intended to exclude from a compensable injury," and further concluding that the injury arose out of and in the course and scope of employment. In its petition for judicial review of the board's order, employer contends that the board erred in concluding that claimant's injuries satisfied the elements of compensability under ORS 656.005(7)(a) and (b)(B).[1] We agree with the board that claimant was not engaged in a recreational or social activity. However, as we explain below, we reverse and remand to the board for a determination of the applicability of the personal comfort doctrine and the going and coming rule under a proper understanding of those doctrines.

We review the board's findings of fact relating to whether claimant engaged in recreational or social activity primarily for the worker's personal pleasure for substantial evidence; that is, we determine whether the record, viewed as a whole, would permit a reasonable person to make the factual findings that the board made. ORS 656.298(7); ORS 183.482(7); ORS 183.482(8)(c). If the board's findings are supported by substantial evidence, we do not substitute our judgment for that of the board as to any issue of fact. ORS 183.482(7).

With those standards in mind, we take the facts from the board majority's findings, which the parties do not challenge. Claimant worked as a customer service assistant in employer's wealth-management department, assisting "banking officers" with their clients' business. Claimant was paid hourly and, as part of her regular work day, she took two mandatory, paid 15-minute breaks, and a one-hour lunch break. Employer encouraged and often reminded claimant to take her breaks. She would coordinate her break times with two other assistants so that one of them was always present in the office.

---

[1] We set forth the text of those sections below. 272 Or App at 34-35.

Claimant worked on the sixth floor of the Tower building. The Tower building shares a lobby with the Plaza building. Employer has a nonexclusive right to use the lobby. Employer's rental payment includes a pro rata share of operating costs, which are expenses paid by the landlord for maintaining, operating, and repairing the building (including the cost of supplies and janitorial and cleaning services). The lease also provides employer with a "self-help" provision, giving it the right to set off portions of its rental payment should the landlord fail to perform its maintenance obligations, and contains a waiver by employer to all claims against the landlord for any personal injuries caused by negligent or willful acts by employer or any employee, in or near the Tower or Plaza buildings.

Employer placed no restrictions on where claimant could go or what she could do during her breaks. Employer provided a break room down the hall from claimant's desk, with coffee, tea, creamer, and hot water available for use. Employer knew that claimant and other employees regularly went downstairs to the lobby for their breaks.

Two or three times per week, claimant went to a coffee shop in the lobby during her break. Claimant estimated that she and the other assistants in her department took their breaks at the coffee shop at about the same frequency. Approximately once a week, claimant would have coffee in the lobby with a friend, who also worked for employer. There was no work connection between claimant and her friend, nor were their meetings work related. Both the friend and claimant described their coffee meetings as "social in nature," stating that they met primarily for their own personal pleasure.

On the day that claimant was injured, she took her morning break at 10:00 a.m., as instructed by her supervisor. Before leaving her desk, she sent her friend an interoffice instant message to coordinate the coffee meeting. As claimant was walking out of the office, one of the banking officers, who was returning from a break, gave her a free coffee voucher that she had gotten from the coffee shop. Claimant accepted the card with the intention of using it that day. She then took the elevator to the lobby to meet her friend. As she

crossed the lobby, talking with her friend, claimant slipped on water and fell, injuring herself. She subsequently filed a workers' compensation claim.

Employer denied claimant's claim on the ground that the injury did not occur in the course and scope of her employment. Claimant requested a hearing. The ALJ upheld employer's denial, determining that claimant's injury was not compensable because it occurred while she was engaged in a social activity performed primarily for her personal pleasure, ORS 656.005(7)(b)(B), or, alternatively, that it did not arise out of and in the course and scope of her employment.

The board determined that claimant was not engaged in the type of "social activity" contemplated by ORS 656.005(7)(b)(B) when injured. Specifically, the board concluded that—although claimant and her friend had testified that their meeting was "social in nature" and for "personal pleasure"—because the activity occurred during a paid, mandatory break, claimant's meeting with her friend was a "regular incident of employment and was not the type of 'social' activity that the legislature intended to exclude from a compensable injury." The board further noted that, even if claimant's activity was "social" in nature, it was not persuaded that claimant's activity was performed "primarily" for personal pleasure, because the activity itself was "incidental to the primarily work-related nature of the activity," namely the paid, mandatory break. Finally, the board concluded that claimant's injury "arose out of" and occurred "in the course of" that employment.[2]

On review, employer asserts that the injury is *per se* noncompensable under ORS 656.005(7)(b)(B), because claimant was injured while engaging in a social activity primarily for her own pleasure. We first examine that contention, reviewing the board's legal conclusion for legal error. ORS 656.298(7); ORS 183.482(8)(a).

To provide context, we begin with the basic principles involved in determining compensability. ORS 656.005 provides, in relevant part:

---

[2] We discuss the board's conclusions relating to the course and scope inquiry in more detail later in this opinion. 272 Or App at 41-42.

"(7)(a)   A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment * * * [.]

"(b)   'Compensable injury' does not include:

"* * * * *

"(B)   Injury incurred while engaging in or performing, or as the result of engaging in or performing, any *recreational or social activities primarily for the worker's personal pleasure* [.]"

(Emphasis added.) Thus, to determine whether claimant's injury is compensable, we must first answer three questions: (1) Was claimant engaged in or performing a recreational or social activity? (2) Was claimant injured while engaging in or performing, or as the result of engaging in or performing, that recreational or social activity? (3) Was claimant engaged in or performing the activity primarily for claimant's personal pleasure? *Roberts v. SAIF*, 341 Or 48, 52, 136 P3d 1105 (2006).[3]

The parties' dispute focuses primarily on the first and third questions. We begin by examining whether the board erred in finding that claimant was not engaged in or performing a recreational or social activity primarily for the worker's personal pleasure.[4]

---

[3] Before the enactment of the "recreational or social" activity exclusion, ORS 656.005(7)(b)(B), to determine whether an injury sustained during a recreational or social activity was compensable, we analyzed whether the injury was one that was "arising out of and in the course of employment," ORS 656.005(7)(a). We considered "such factors as the location of the recreational activity, whether on or off the employer's premises; the time of the activity, during, before, or after work hours; the employer's initiative in organizing the activity; the employer's contribution to the activity; and the quality and type of benefit derived by the employer." *Roberts v. SAIF*, 196 Or App 414, 417, 102 P3d 752 (2004), *aff'd*, 341 Or 48, 136 P3d 1105 (2006).

Since the enactment of the recreational or social activity exclusion, we "address whether an injury is excluded from coverage under [the statute] before considering whether the injury arises out of or in the course of the employment," because, "[i]f the injury occurred during a social or recreational activity primarily for the worker's personal pleasure, it is *per se* noncompensable." *Id.*

Thus, although the enactment of ORS 656.005(7)(b)(B) has changed the order of our analysis, its enactment has not had a significant effect on the scope of the inquiry. *Id.*

[4] We have referred to the dictionary definitions of many of the terms in the phrase at issue. *See, e.g., Washington Group International v. Barela*, 218 Or App 541, 546-47, 180 P3d 107 (2008) *(Barela)* (citing *Liberty Northwest Ins. Corp. v. Nichols*, 186 Or App 664, 668, 64 P3d 1152 (2003) *(Nichols)*).

The parties do not dispute that claimant was not engaged in a recreational activity;[5] instead, they focus on the social aspect of claimant's activity. Under our precedent, "social activity" means an occupation or pursuit that is "marked by or passed in pleasant companionship with one's friends or associates * * * taken, enjoyed, or engaged in with friends or for the sake of companionship." *Washington Group International v. Barela*, 218 Or App 541, 546-47, 180 P3d 107 (2008) (internal quotation marks omitted); *Roberts v. SAIF*, 196 Or App 414, 417-18, 102 P3d 752 (2004), *aff'd*, 341 Or 48, 136 P3d 1105 (2006).

To determine whether a claimant was engaged in a social activity, we have looked at whether the claimant had a work-related reason for engaging in the activity and whether the activity was "marked by * * * pleasant companionship." *Barela*, 218 Or App at 546-47; *Legacy Health Systems v. Noble*, 232 Or App 93, 98, 221 P3d 180 (2009) (*Noble I*) (noting that claimant was not engaged in a "social" activity when she was walking alone through a parking lot on a paid break).

With regard to the "type" of activity that the legislature intended to exclude from compensability, we have continued to adhere to the understanding that

"the exclusion for 'recreational or social activities' [in ORS 656.005(7)(b)(B)] was a legislative reaction to *Beneficiaries of McBroom v. Chamber of Commerce*, 77 Or App 700, 713 P2d 1095, *rev den*, 301 Or 240, 720 P2d 1279 (1986), a case in which this court found compensable the death of a travelling salesman who, on a business trip to Los Angeles,

---

For purposes of ORS 656.005(7)(b)(B), "recreational activity" means activities "of or relating to" "'the act of recreating or state of being recreated : refreshment of the strength and spirits after toil : DIVERSION, PLAY * * *[.]'" *Roberts*, 196 Or App at 417-18 (quoting *Webster's Third New Int'l Dictionary* 1899 (unabridged ed 1993) (internal citations omitted; ellipses and brackets in *Roberts*)).

"'[A]ctivity' means 'an occupation, pursuit, or recreation in which a person is active—often used in pl[ural] activities <social activities> * * *[.]'" *Id.* (quoting *Webster's* at 22).

[5] *See, e.g.*, *Legacy Health Systems v. Noble*, 232 Or App 93, 98, 221 P3d 180 (2009) (*Noble I*) (explaining that claimant was not engaged in recreational activity, because walking through a parking lot during a paid break could not be characterized as "refreshing her strength and spirits after toil or engaged in play, diversion, or entertainment").

became extremely inebriated and drowned in his hotel's hot tub. Further, we have noted that the typical recreational activity case involves off-the-job group recreational or social activities such as picnics, office parties, or organized or spontaneous sports or games."

*Noble I*, 232 Or App at 98 (internal citations and quotation marks omitted). For example, in *Noble I*, we explained that "walking to the bank while on the clock" was not a recreational activity for two reasons. First, that activity did not fit the "established definition" of that phrase, *id.* (noting that "by no stretch of the imagination can we conclude that she was refreshing her strength and spirits after toil or engaged in play, diversion, or entertainment"), and, second, that activity did not resemble previously recognized types of recreational activity, *id.* at 98-99 (explaining that claimant's activity did not "bear any kind of relationship to soaking in a hot tub, picnicking, or engaging in a game or sport"). Although we have acknowledged that, under certain circumstances, walking can be a recreational or social activity, under the circumstances presented in *Noble I*, we could not characterize the activity that way.

In the context of ORS 656.005(7)(b)(B), "primarily" means "first of all: fundamentally, principally." *Roberts*, 341 Or at 53 (internal quotation marks omitted). "[A] worker may engage in a recreational or social activity for reasons other than personal pleasure," and our task "is to determine whether the worker's personal pleasure was the principal or fundamental reason for engaging in the activity." *Id.* That requires us to determine "whether there was any work-related reason for the activity." *Barela*, 218 Or App at 546. That is, we must determine "both the degree to which a recreational or social activity serves the employer's work-related interests and the degree to which the worker engaged in the activity for the worker's personal pleasure. Only if the worker's personal pleasure was the fundamental or principal reason, in relation to work-related reasons, for engaging in the activity will the resulting injury be noncompensable." *Roberts*, 341 Or at 56. "[T]he 'activity' [that ORS 656.005(7)(b)(B)] refers to is not the particular action that causes the injury ***, but the activity within which that action occurs (working or not working)." *Roberts*, 196

Or App at 418 (citing *Liberty Northwest Ins. Corp. v. Nichols*, 186 Or App 664, 670 n 4, 64 P3d 1152 (2003)). In that vein, recreational activities that occur "on the job" are not *"always* incidental to the primary activity of working." *Id.* at 419 (emphasis added). Thus, the proper focus is not on the fact that the recreational or social activity is pleasurable but on the fact that the activity is work related. That is, the injury is compensable if it occurred during a recreational or social activity that is *incidental to an employment activity. Nichols*, 186 Or App at 666-71 (determining that claimant, who had injured a tooth while eating candy "while working"—as distinguished from "traveling to or from work, on a break, or at lunch"—had not engaged in a recreational or social activity *primarily* for claimant's personal pleasure).

With that understanding, we consider whether the board erred when it determined that claimant was not engaged in or performing a recreational or social activity at the time of the injury. Here, claimant was neither engaged in recreational activity nor was her activity purely social (taken for the sake of companionship). Further, a work-related reason for claimant's break activity existed: claimant took a mandatory, paid break at employer's direction. Substantial evidence supports the board's finding that the personal nature of claimant's meeting with her friend was incidental or secondary to the work-related reason for the break, and that finding supports the board's conclusion that the injury did not occur during a recreational or social activity.

We next address whether claimant's injury was compensable, that is, whether it passes "the 'arise out of and in the course of employment' test." *Id.* at 667; ORS 656.005(7)(a). Again, we review the board's determination for legal error. ORS 656.298(7); ORS 183.482(8)(a).

The Supreme Court has explained compensability as follows:

"For an injury to be compensable under the workers' compensation law, it must 'aris[e] out of' and occur 'in the course of employment.' The 'arise out of' prong of the compensability test requires that a causal link exist between the worker's injury and his or her employment. The requirement that the injury occur 'in the course of' the employment

concerns the time, place, and circumstances of the injury. This court views the two prongs as two parts of a single 'work-connection' inquiry, that is, whether the relationship between the injury and the employment is sufficient that the injury should be compensable. Both prongs of the work-connection test must be satisfied to some degree; neither is dispositive. The work-connection test may be satisfied if the factors supporting one prong of the statutory test are minimal while the factors supporting the other prong are many. Both prongs serve as analytical tools for determining whether, in the light of the policy for which that determination is to be made, the causal connection between the injury and the employment is sufficient to warrant compensation."

*Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596-97, 943 P2d 197 (1997) (internal citations and footnotes omitted).

Employer contends that, even if claimant's injuries are not subject to the recreational or social activity exclusion, her injury did not arise out of and in the course of her employment, because the meeting served no employment purpose. Further, employer asserts that claimant's activity was subject to and excluded from compensation under the "going and coming" rule.

As it relates to the course and scope determination, the board relied on its own opinion in a case that we subsequently reversed, *Enterprise Rent-A-Car Co. of Oregon v. Frazer*, 252 Or App 726, 730, 289 P3d 277 (2012). In *Frazer*, the claimant worked at a "call center," took regular, paid breaks, and was prohibited by the employer from staying in her work area during her breaks. During one such break, the claimant left the employer's premises and went to a "covered 'smoking hut' * * * located in the parking lot, approximately 100 feet from [the] employer's front door." *Id.* at 728. Returning from her break, she fell in the parking lot and was injured. The board determined that the going and coming rule did not apply, "because claimant was taking only 'a brief' break during regular work hours" and "because claimant had traveled only about 100 feet from her workplace during that break." *Id.* at 732.

Examining only whether the injury occurred in the course of employment, we concluded that the board erred in

its analysis when it determined that the going and coming rule did not apply. *Id.* at 732-33. We reversed and remanded the case for the board to address whether the employer controlled the area where the injury occurred and, thus, whether the parking lot exception to the going and coming rule applied, stating that the claimant's injury did not occur in the course of her employment, unless "some exception" to the going and coming rule applied, because "[c]laimant was away from her workplace on a regular break and she was not 'on duty' or otherwise subject to employer's direction or control." *Id.* at 736-37. In rejecting the board's conclusion that the going and coming rule did not apply based on the duration of the break and proximity to the workplace, we reasoned that such a conclusion could not be squared with *Noble I*, in which we had implicitly stated that the claimant's injury in an icy parking lot would be noncompensable under the going and coming rule, unless the parking lot exception applied. In reversing the board's order in *Frazer*, the majority opinion did not rely on the personal comfort doctrine to reach its determination.[6] *Id.*

Thus, we determined that the board had erred. We reversed and remanded *Frazer* to the board for reconsideration under a proper understanding of the going and coming rule and the parking lot exception. *Id.* at 736-37.

As indicated, in this case, the board relied on its order in *Frazer* to reach the conclusion that the going and coming rule did not apply "where the claimants were only taking brief breaks and they were 'on the clock,' in close proximity to their working areas when injured." The board reasoned that claimant's activities in this case, like the claimant's activities in *Frazer*, "were more analogous to cases where a worker is injured during a 'personal comfort' activity." Consequently, the board concluded that "the 'going and coming' rule does not apply where a claimant is only on a brief departure for personal comfort from work activities near the workplace and, therefore, not truly 'going to' or 'coming from' work."

---

[6] In *Frazer*, Judge Wollheim dissented, indicating that the personal comfort doctrine should apply to the case and, therefore, that the board did not err when it did not apply the "going and coming" rule. 252 Or App at 748 (Wollheim, J., dissenting).

The board continued:

"Here, as in *Frazer* \* \* \*, claimant's injury occurred when she was on a brief paid break, during her regular work hours, and in close proximity to her work area—*i.e.*, in the common lobby area of the same office building. The employer required claimant to take two such breaks every work day and, on the day of injury, had specifically told claimant not to take her mandatory break until after her coworkers returned. Claimant had no intention of leaving the building during her break, nor did she. Her only purpose for going to the lobby of the building was to get coffee at the place where she and other coworkers regularly visited. At the time of her injury, she was crossing the lobby via her normal egress/ingress route. Under these circumstances \* \* \* claimant's brief departure from employment to get coffee in the common lobby of her office building did not amount to her 'coming from' work, and did not remove her from the course of her employment."

(Footnote and citations omitted.) Shortly after entering the order in this case, we reversed the board's order in *Frazer*. Because the board relied on its own decision in *Frazer*, and in light of our determination that the board's analysis was incorrect, we must reverse and remand the board's order in this case. *See, e.g., Norris v. Board of Parole*, 152 Or App 57, 61-62, 952 P2d 1037 (1998) (remanding a case when, after the parties had briefed the case, the Supreme Court had issued a decision resolving the legal point in dispute, "based on the recognition that a point of law, which had become settled after the [b]oard had acted, affected the [b]oard's decision").

On remand, the board must address the course and scope determination in light of a proper understanding of the application of the going and coming rule and personal comfort doctrine. Therefore, we turn to the parties' arguments to better frame that understanding.

Here, relying on our recent opinion in *Frazer* relating to the proper application of the going and coming rule, employer contends that the personal comfort doctrine does not bring claimant's injury into the course and scope of employment. In employer's view, because claimant was away from her work on a break, our decision in *Frazer* mandates

the conclusion that the going and coming rule precludes compensability. As we explain below, we reject employer's argument.

In *Frazer*, on judicial review of the board's order, the employer did not make any arguments relating to personal comfort.

First, as we have already noted, the board in *Frazer* did not rely on the personal comfort doctrine in determining that the claimant's injury arose out of and in the course of her employment. As we discuss in more detail below, the personal comfort doctrine focuses largely on the type of activity in which the worker was engaged when injured. The board's order in *Frazer* did not have that focus. Rather, in keeping with its understanding of the going and coming rule, the board focused on the duration of the claimant's break and the location in which she took it. The board's reliance on those factors, rather than the type of activity involved, confirms that the board did not base its determination on the personal comfort doctrine in *Frazer*.

Second—and understandably, given the board's focus—on judicial review of the board's order in *Frazer*, the employer did not make any arguments relating to personal comfort. Instead, the employer focused almost exclusively on the application of the going and coming rule and the parking lot exception to that rule.

In contrast, the claimant in *Frazer* sketched out a passing mention of the personal comfort doctrine. However, the claimant related most of her arguments to the applicability of the going and coming rule and parking lot exception or whether the activity was "reasonably incidental" to her employment. She also focused her arguments on the employer's "control" over the worker or the area where the injury occurred. But, more to the point here, the claimant in *Frazer* argued, "The Court has recognized a number of exceptions to the 'going and coming' rule, such as the 'parking-lot' exception and the 'personal comfort doctrine.'" Thus, in *Frazer*, the claimant asserted, incorrectly, that the personal comfort doctrine is simply *another exception to the going and coming rule.*

As noted, in *Frazer*, we concluded that the board erred when it determined that the going and coming rule did not apply, based on the claimant's proximity to her work and the duration of the break. 252 Or App at 736. We did not rely on the personal comfort doctrine to reach our determination.[7] Thus, in light of the parties' arguments, our analysis in *Frazer* stands for the proposition that a proper understanding of the going and coming rule involves a level of inquiry into employer control, in addition to factors such as duration and proximity.

Here, claimant contends that employer misunderstands the relationship between the personal comfort doctrine and the going and coming rule. According to claimant, she was engaged in a work activity at the time she was injured, and therefore the injury falls under the "personal comfort" doctrine because, unlike in *Frazer*, the going and coming rule is inapplicable because claimant had not left the course and scope of her employment. Citing *Jordan v. Western Electric*, 1 Or App 441, 463 P2d 598 (1970), *Halfman v. SAIF*, 49 Or App 23, 618 P2d 1294 (1980), and *Clark v. U.S. Plywood*, 288 Or 255, 605 P2d 265 (1980), claimant contends that a proper consideration and application of the course and scope inquiry under ORS 656.005(7)(a) requires consideration of the personal comfort doctrine. As we explain in greater detail below, we agree with claimant.

The "in the course of" employment prong of the unitary work-connection test examines the sufficiency of the connection between "the time, place and circumstances" of the injury and the claimant's employment; if there is an insufficient connection between the injury and the employment, generally the injury is noncompensable. It is in that context that we consider the applicability of the going and coming rule as well as the applicability of the personal comfort doctrine. *Jordan*, 1 Or App at 443 (personal comfort doctrine); *Philpott v. State Ind. Acc. Com.*, 234 Or 37, 40-41, 379 P2d 1010 (1963) (going and coming rule). To provide context,

---

[7] As indicated, Judge Wollheim dissented, concluding that the personal comfort doctrine should apply to the case notwithstanding the fact that the claimant had incorrectly characterized the personal comfort doctrine. *Frazer*, 252 Or App at 748 (Wollheim, J., dissenting).

we explore in greater detail the going and coming rule and the personal comfort doctrine and the relationship between those principles.

The going and coming rule provides generally that injuries sustained while an employee is travelling to or from work do not occur in the course of employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996); *see also Philpott*, 234 Or at 40 (stating principle). The reasoning behind the going and coming rule is "that the relationship of employer and employee is ordinarily suspended from the time the employee leaves his work to go home until he resumes his work, since the employee, during the time that he is going to or coming from work, is rendering no service for the employer." *Id.* at 40-41 (internal quotation marks omitted). The going and coming rule applies to injuries occurring both before and after the workday, in addition to injuries occurring while the employee is going to or coming from a break. *Frazer*, 252 Or App at 730-31.

But the going and coming rule is not implicated at all—that is, the rule is never triggered—when a worker has not left work. Thus, the going and coming rule generally does not apply when the worker, although not engaging in his or her appointed work activity at a specific moment in time, still remains in the course of employment and, therefore, has not left work. Sometimes that occurs because the worker is "still 'on duty' and otherwise subject to the employer's direction or control." *Frazer*, 252 Or App at 731. The personal comfort doctrine may apply in that situation, depending on the nature of the activity in which the worker is involved.

Under the personal comfort doctrine, an employee remains in the course and scope of employment if he or she engages in an activity that is not his or her appointed work task, but which is a "personal comfort" activity that bears a sufficient connection to his or her employment. Courts look to seven factors to make that determination, focusing generally on whether the activity was contemplated, directed by, or acquiesced in by the employer, where the activity occurred, and whether the employer benefited from the

activity. *Jordan*, 1 Or App at 443.[8] The cases applying the personal comfort doctrine have also focused on the distinction between a claimant who is on a "personal mission of his own" and one who engages in "personal comfort" activities that are merely incidental to employment. *Halfman*, 49 Or App at 28-29. We have distinguished the former category, conducting "personal business * * * which had nothing to do with [the claimant's] employment," from the latter category, which involves engaging in activity with a "limited objective" of achieving "personal comfort"—such as restroom breaks, getting something to drink, or other "typical kind of coffee break activity" which is "contemplated by an employer" and, therefore, do not "remove[] [the employee] from the employment situation." *Id.* at 29-30; *see also Clark*, 288 Or at 260-61 (noting that the personal comfort doctrine applies in situations in which claimant sustains injuries while engaged "in other incidental activities not directly involved with the performance of the appointed task, such as preparing for work, going to or from the area of work, eating, rest periods,

---

[8] The seven *Jordan* factors are:

"(a) Whether the activity was for the benefit of the employer * * *;

"(b) Whether the activity was contemplated by the employer and employee either at the time of hiring or later * * *;

"(c) Whether the activity was an ordinary risk of, and incidental to, the employment * * *;

"(d) Whether the employee was paid for the activity * * *;

"(e) Whether the activity was on the employer's premises * * *;

"(f) Whether the activity was directed by or acquiesced in by the employer * * *;

"(g) Whether the employee was on a personal mission of his own[.]"

*Jordan*, 1 Or App at 443-44 (internal citations omitted).

In the wake of the adoption of the unitary work-connection test, courts can still consider the seven *Jordan* factors to determine compensability. *See Rogers v. SAIF*, 289 Or 633, 643, 616 P2d 485 (1980) ("Existing law regarding proximity, causation, risk, economic benefit, and all other concepts which are useful in determining work relationship remain applicable."); *First Interstate Bank v. Clark*, 133 Or App 712, 717, 894 P2d 499 (1995) (explaining that, although the seven factors derived from *Jordan* were no longer the independent and dispositive test of work-connection, "depending on the circumstances, some or all of those factors will remain helpful inquiries" under the unitary work-connection test); *Wallace v. Green Thumb, Inc.*, 61 Or App 695, 698-700, 658 P2d 560, *aff'd*, 296 Or 79, 672 P2d 344 (1983) (noting that the court's adoption of the "unitary work connection approach" was not a rejection of "the specialized concepts that have been developed to analyze the relationship between the injury and the employment, *e.g.*, personal comfort, special errand and lunch hour cases").

going to the bathroom, or getting fresh air or a drink of water").

Notably, the Supreme Court has focused on whether the activity was "expressly or impliedly authorized" by the employer. *Clark*, 288 Or at 264 (emphasis omitted). The court reasoned that conduct or activity that the employer expressly authorizes "should be compensated whether it occurs in a directly related work activity or in conduct *incidental to the employment.*" *Id.* at 267 (emphasis added). Likewise, when an employer impliedly allows conduct or acquiesces to an activity, then injuries incurred while engaging in such conduct or activities are compensable. *Id.*

In *Mellis v. McEwen, Hanna, Grisvold*, 74 Or App 571, 703 P2d 255, *rev den*, 300 Or 249 (1985), we addressed a factual situation similar to that presented here. In that case, the claimant was injured after leaving her office on the fourteenth floor of the office building in which she worked to take a "quick break to clear her mind" in the cafeteria, which was "primarily maintained for, and patronized by, the building's tenants." *Id.* at 573. She injured herself on a chair in the cafeteria. Applying the seven factors identified in *Jordan*, we concluded that the claimant's leg injury was compensable, because the break occurred within her regular work hours; it was "contemplated by both employer and claimant" that the claimant would take coffee breaks as part of her regular work day and, therefore, the activity was acquiesced in by employer; the claimant was not on a personal mission; and the claimant was engaging in a "15 minute break that is a 'typical kind of coffee break activity that is contemplated by an employer[.]'" *Id.* at 574-75. We concluded that the *claimant's activity was not a departure from the employment relationship*, even though it did not occur on the employer's premises, because the claimant was engaged in a personal comfort activity when injured. *Id.* at 574-75 (citing *Halfman*, 49 Or App at 29).

More recently, the Supreme Court confirmed the continued viability of the personal comfort doctrine in *Hayes*, stating,

"An injury occurs 'in the course of' employment if it takes place within the period of employment, at a place where a

worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is *doing something reasonably incidental to it.* *** By 'reasonably incidental to' employment, we include activities that are personal in nature—such as a telephone call home or a brief visit with a co-worker—as long as the conduct bears some reasonable relationship to the employment and is expressly or impliedly allowed by the employer."

325 Or at 598-99 (emphasis added).

All told, despite employer's arguments to the contrary, this application of the personal comfort doctrine is not inconsistent with our opinion in *Frazer*, because a proper application of the course and scope inquiry requires an antecedent consideration of the personal comfort doctrine. Stated another way, when a claimant is injured, the board must first inquire into the nature of the claimant's activity to determine whether the claimant's activity bears a sufficient connection to the employment so that the claimant cannot be considered to have left the course and scope of employment, making the personal comfort doctrine applicable and the going and coming rule inapplicable. After making that inquiry, if the board determines that the claimant has not engaged in a personal comfort activity, but rather was injured while on a "personal mission of his own," or determines that the personal comfort activity did not bear a sufficient connection to the employment, then the board may consider whether the going and coming rule, or any of the exceptions to that rule, would properly apply. *Frazer*, 252 Or App at 730-31.

In this case, the board's order purported both to apply the personal comfort doctrine (which focuses on a worker's activity) and to rely on the board's earlier decision in *Frazer* which, as we have explained, was based not on an application of the personal comfort doctrine, but on the board's analysis of the going and coming rule (focusing on the duration and location of the claimant's break). That internal tension in the board's analysis leads us to conclude that we must remand the order to the board so that it may explicitly address the parties' dispute about whether claimant was engaged in a personal comfort activity of a type that means that she still was acting in the course of her

employment when she was injured, under *Jordan*, *Halfman*, *Clark*, and *Mellis*.

Reversed and remanded.