Argued and submitted March 13, decision of Court of Appeals reversed and case remanded to Court of Appeals for further proceedings July 11, 2002

Sommuang PANPAT,
as Personal Representative for the Estate of
Achara Tanatchangsang,
*Petitioner on Review,*

*v.*

OWENS-BROCKWAY GLASS CONTAINER, INC.,
a Delaware corporation,
*Respondent on Review,*

*and*

STANLEY-SMITH SECURITY,
a Texas corporation,
dba Wallace Security,
Wallace Prince,
individually and in his capacity as
Security Supervisor,
and A. J. Campbell,
individually and in his capacity as a
Security Officer,
*Defendants.*

OWENS-BROCKWAY GLASS CONTAINER, INC.,
a Delaware corporation,
*Third-Party Plaintiff,*

*v.*

ESTATE OF CHRIS A. BLAKE,
*Third-Party Defendant.*

(CC 9708-06234; CA A104501; SC S48419)

49 P3d 773

Kathryn Hall Clarke, Portland, argued the cause for petitioner on review. Jana Toran, Portland, and James Patrick McHugh, Jr., filed the briefs for petitioner on review.

Lee Ann Huntington, of Morgenstein & Jubelirer LLP, San Francisco, argued the cause for respondent on review. With her on the briefs were Stephen M. Hankins, San Francisco, and Charles F. Adams and Andrew R. Gardner, of Stoel Rives LLP, Portland.

DE MUNIZ, J.

**DE MUNIZ, J.**

The issue in this case is whether the exclusivity provision of the Oregon Workers' Compensation Law bars plaintiff's civil action against the decedent's employer. Chris Blake killed his former girlfriend, Achara Tanatchangsang (decedent), at their place of employment, Owens-Brockway Glass, Inc. (Owens). Plaintiff Panpat, as the personal representative of decedent's estate, brought a wrongful death action against defendant Owens. Owens moved for summary judgment arguing, *inter alia*, that Owens lacked notice that Blake was dangerous and that the workers' compensation statutes provided plaintiff's exclusive remedy. The trial court granted summary judgment on the ground that Owens did not have notice that Blake was dangerous. However, the trial court later granted a new trial based on newly discovered evidence. Owens appealed from that ruling. The Court of Appeals reversed the order granting the new trial and remanded with instructions to enter judgment in Owens's favor, on the ground that the workers' compensation scheme provided the exclusive remedy for plaintiff's claim. *Panpat v. Owens-Brockway Glass Container*, 172 Or App 470, 21 P3d 97 (2001). We allowed review, reverse the decision of the Court of Appeals and remand to that court for further consideration.

We take the following facts from the Court of Appeals' opinion:

"Chris Blake and Achara Tanatchangsang worked on the same shift in employer's Portland manufacturing plant. Blake and Tanatchangsang were also involved in a romantic relationship that ended in November 1995. In January 1996, Blake told employer's plant superintendent that he was having difficulty coping with the breakup and that he did not want to work the same shift as Tanatchangsang. Employer's plant superintendent approached Tanatchangsang and offered to transfer her to a different shift. Tanatchangsang did not want to be transferred, however. In January 1996 and again in March 1996, Tanatchangsang reported to her supervisor that Blake had called her derogatory names. At some point after the March 1996 incident, Blake was placed on medical leave.

"In April 1996, while still on medical leave, Blake entered employer's manufacturing plant and shot and killed Tanatchangsang while she was at work. He then killed himself."

172 Or App at 473.

Plaintiff filed this wrongful death action alleging that Owens had acted negligently by failing to provide sufficient workplace security that would have protected decedent from Blake. Plaintiff alleges that Owens's negligence had been a substantial factor in causing decedent's death. Specifically, plaintiff alleged that Owens negligently

"created a foreseeable risk of harm to Tanatchangsang in the following particulars:

"(a)  In failing to instruct security officers to refuse entry to Blake;

"(b)  In failing to provide training to security officers regarding [Owens'] policies;

"(c)  In failing to provide Tanatchangsang security despite knowledge that Blake posed a substantial risk of harm to her;

"(d)  In failing to intervene when notified Tanatchangsang was being held at gunpoint;

"(e)  In allowing a visibly intoxicated person to enter the facility; and, or

"(f)  After observing Blake's presence, by failing to direct him to exit the premises."

*Id.* at 473-74.

Owens moved for summary judgment on two grounds. First, Owens asserted that it had no notice of the need to control Blake and that Blake's criminal act had not been foreseeable. Second, Owens maintained that the Oregon workers' compensation system provided the exclusive remedy for plaintiff's claim. The trial court granted summary judgment, concluding that plaintiff had "failed to present a genuine issue for trial concerning [Owens'] knowledge of the need to control Chris Blake."

Plaintiff then requested a new trial after discovering that Owens had adopted a workplace violence policy. According to plaintiff, Owens had failed to follow that policy when it had become aware that Blake had called decedent derogatory names at work. Under the workplace violence policy, plaintiff argued, Owens had imposed on itself a policy to take action to prevent further incidents. According to Owens, however, the workplace policy had not been adopted until after the shooting. Reasoning that the discovery of the workplace violence policy created a disputed issue of fact as to the policy's effective date, the trial court granted plaintiff's motion for a new trial and Owens appealed from that order. That appeal led to our review here.

In the Court of Appeals, Owens argued that evidence of the workplace violence policy was inadmissable as a subsequent remedial measure, and that it was error to grant a new trial on that basis. Alternatively, Owens maintained that the exclusive remedy provision of the workers' compensation statutes precluded plaintiff's wrongful death action because her death arose out of her employment. The Court of Appeals agreed with Owens' exclusivity argument, holding that the parts of plaintiff's complaint alleging that Owens had played some role in causing decedent's death meant that her death had arisen out of her employment, thus triggering the exclusivity provision of the Workers' Compensation Law. 172 Or App at 477-79.

At the outset, we note that the issue in this case—whether plaintiff's claim involves a "compensable" injury for which the administrative remedy under the Workers' Compensation Law is exclusive—does not require invocation of the doctrine of "primary jurisdiction." *See Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 191-93, 935 P2d 411 (1997) (discussing doctrine). It is true that the Workers' Compensation Board (board) routinely addresses questions regarding the compensability of workplace injuries. However, we see nothing regarding the board's statutory jurisdiction or adjudicative responsibilities that makes the board, rather than a court, a preferable forum, in the primary jurisdiction sense, for the resolution of the issue presented here. *See Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525 n 3, 919 P2d 465 (1996) (rejecting dismissal or abatement of

wrongful death action to allow parties to resort to workers' compensation system because "such a result would serve no constructive purpose"); *Kilminster v. Day Management Corp.*, 323 Or 618, 624-25, 919 P2d 474 (1996) (addressing on merits, without referral to board, question whether ORS 656.018 precluded wrongful death claim based on negligence theory). Consequently, we turn to the merits of plaintiff's claim and defendant's exclusivity defense.

■    Generally, we review for errors of law when a trial court has granted a motion for a new trial. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 151, 26 P3d 785 (2001). Here, the trial court reconsidered its order granting summary judgment, believing that a disputed issue of fact prevented that disposition. The Court of Appeals concluded that summary judgment was the correct result because the Workers' Compensation Law, not tort law, provided the exclusive remedy. That holding rendered the allegedly disputed fact irrelevant. If the Court of Appeals was correct, then the trial court erred as a matter of law in granting a new trial.

■    When the Workers' Compensation Law provides the basis for a compensable injury claim, then that remedy is exclusive and the worker cannot seek a tort remedy instead. ORS 656.018(1)(a).[1] Conversely, if the injury did not arise out of and in the course of employment, then the exclusivity provision of the Workers' Compensation Law is not a bar to a civil action against an employer for personal injuries. *See Krushwitz*, 323 Or at 525 (explaining operation of exclusivity provisions in ORS 656.018(1)(a)). Therefore, the issue in this case is one of compensability under the Workers' Compensation Law.

---

[1] ORS 656.018(1)(a) provides:

"The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter."

The legislature has provided an analytical framework, which this court has interpreted numerous times, to determine whether a claim should be considered compensable under the workers' compensation scheme. Allegations of employer negligence might or might not be relevant in making that determination, depending on the context and stage of the proceedings. *See Newell v. Taylor, et al,* 212 Or 522, 530, 321 P2d 294 (1958) ("Negligence plays no part in the injured workman's right to compensation, * * * while it is of the essence in tort actions."). Here, because the issue reaches this court at the summary judgment stage, it is the *factual* record that provides the principal basis for our resolution of the issue. We now turn to the question whether decedent's death gave rise to a compensable claim.

■■ A compensable injury, for purposes of workers' compensation is an injury "arising out of and in the course of employment * * *." ORS 656.005(7)(a). This court treats "arising out of" and "in the course of" employment as "two elements of a single inquiry," both of which must be satisfied to some degree. *Redman Industries, Inc. v. Lang,* 326 Or 32, 35, 943 P2d 208 (1997). If one element is met easily, then the other element must be met at least minimally. *Id.* It is undisputed that in this case decedent's death occurred "in the course of" her employment at Owens. Thus, the sole issue is whether her death "arose out of" that employment in some way.

■ This court has construed the wording of ORS 656.005(7)(a) on several occasions. *See, e.g., Redman,* 326 Or at 35-42 (construing "arising out of"). In *Redman,* the court determined that the "arising out of" requirement is intended to "test[ ] the causal connection between the injury and the employment." *Id.* at 35. "A causal connection requires more than a mere showing that the injury occurred at the workplace and during working hours"; it also "must be linked to a risk connected with the nature of the work or a risk to which the work environment exposed claimant." *Id.* at 36.

■■ This court has categorized risks associated with the work environment: Risks "distinctly associated with the employment" are universally compensable; risks "personal to

the claimant" are universally noncompensable; and neutral risks are compensable "if the conditions of employment put claimant in a position to be injured." *Redman*, 326 Or at 36 (quoting *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29-30, 672 P2d 337 (1983)). Unexplained accidents are a "classic example" of neutral risks where, for example, an unknown person assaults a claimant for unknown reasons. *Redman*, 326 Or at 37. "[O]ther examples of neutral risks would include an employee being hit by a stray bullet, bitten by a dog, struck by lightning, or injured by debris from a distant explosion." *Id.* at 37 n 1. The foregoing establishes that decedent's death was not an example of a neutral risk. The identity of her killer and his motivation were known. *See id.* at 37 ("Because both the identity and the motive are known, the assault does not fall into the category of neutral risks.").

■ Putting aside the application of neutral risks in this case, we must distinguish between risks "distinctly associated with the employment," and those risks "personal to the claimant." Although "the risk of an assault by a coworker in the workplace is a risk to which the work environment exposes an employee," that observation does not lead to the conclusion "that an injury resulting from an assault by a coworker arises out of employment *per se*." *Id.* at 40. As the *Redman* court explained:

> "The rationale for the 'proximity' test is that a workplace assault by a coworker is caused by circumstances *associated with the work environment*. When the motivation for an assault by a coworker is an event or circumstance pertaining to the assailant and the claimant that originated entirely separate from the workplace, and the only contribution made by the workplace is to provide a venue for the assault, then the rationale does not apply. [Professor] Larson explains this limitation as follows:
>
>> " 'When the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test.' 1 *Larson's Workers' Compensation Law* § 11.21(a) at 3-314.
>
>> "*An example would be where two employees had a romantic relationship outside of work and a workplace*

*assault by one on the other was based on an event unique to that relationship and was not fueled, in part, by any workplace event."*

*Redman,* 326 Or at 40-41 (first emphasis in original; second emphasis added; footnote omitted).

The Court of Appeals failed to apply the foregoing passage, which is controlling here. Instead, it held that, because plaintiff alleged in her complaint that Owens' failure to provide a secure workplace had been a substantial factor in causing decedent's death, she therefore conceded that the workplace was not simply the venue for the assault, but had *facilitated* that assault.

The Court of Appeals' emphasis on whether the workplace "facilitates" the assault, as part of the test for "arising out of" element of the compensability test, comes not from this court's case law, but from a treatise. *See* 172 Or App at 479 (quoting Arthur Larson and Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 8.02[1][c] (2000)). However, it is this court's opinions, not the treatise, that controls.[2] Put differently, this case does not require some further construction of ORS 656.005(7)(a) under the template of *PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993), to determine the legislature's intent; it only requires the application of precedent.

The passage from *Redman,* quoted above, places emphasis on the *motivation* for the assault and whether that motivation "originated entirely separate from the workplace." *Redman,* 326 Or at 40. Stated another way, whether the motivation for the assault was a workplace event or an "event unique" to the romantic relationship is determinative. *Id.* at 41. It is undisputed that Blake's motivation for the killing was that he was having difficulty coping with decedent's decision to end their romantic relationship. Her decision to end the relationship was not, the parties agree, a "workplace event," but a personal matter. In other words, it was a personal risk rather than a risk "distinctly associated with the

---

[2] We note that the Court of Appeals undertook to modify the construction of "arising out of" under ORS 656.005(7)(a) without reference to *PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993) or to the legislature's intent.

employment." *See Redman*, 326 Or at 37 (risks distinctly personal to the employee do not "arise out of" employment). It follows that decedent's death did not arise out of the course of her employment and, consequently, that the Court of Appeals erred in holding that plaintiff's action is barred by the exclusivity provision of the Workers' Compensation Law.

The Court of Appeals decided the case on grounds which the trial court did not rely. Those on which the trial court did rely remain to be considered. We therefore remand the case to the Court of Appeals for consideration of those other arguments.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.