Argued and submitted June 22, 2005, decision of Court of Appeals and order of Workers' Compensation Board affirmed June 15, 2006

In the Matter of the Compensation of
Clifton R. Roberts, Claimant.

Clifton R. ROBERTS,
*Petitioner on Review,*

*v.*

SAIF CORPORATION
and Butler Ford, Inc.,
*Respondents on Review.*

(02-07221; CA A122465; SC S52078)

136 P3d 1105

Robert F. Webber, of Black, Chapman, Webber, Stevens & Peterson, Medford, argued the cause and filed the petition for petitioner on review.

David L. Runner, Appellate Counsel, SAIF Corporation, Salem, argued the cause and filed the brief for respondents on review.

Before Carson, Chief Justice,** and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

KISTLER, J.

Durham, J., concurred and filed an opinion in which Riggs, J., joined.

_____

** Chief Justice when case was argued.
*** Chief Justice when case was decided.

## KISTLER, J.

A coworker backed a company pickup into claimant while claimant was riding a motorcycle at work. Claimant filed a workers' compensation claim. Employer resisted the claim on the ground that a statutory exclusion for injuries incurred "while engaging in or performing * * * any recreational or social activit[y] primarily for the worker's personal pleasure" applied. *See* ORS 656.005(7)(b)(B) (stating exclusion).[1] The Workers' Compensation Board held that the exclusion applied, and the Court of Appeals affirmed. *Roberts v. SAIF*, 196 Or App 414, 102 P3d 752 (2004). We allowed claimant's petition for review and now affirm the Court of Appeals decision.

Claimant worked as a salesperson for an automobile dealership. One day, a coworker brought his motorcycle to work. The general manager took a ride on the motorcycle before work. Later that day, another employee rode the motorcycle. During the day, while the salespeople were waiting for customers, claimant rode the motorcycle on the sales lot. As claimant was bringing the motorcycle back to park it in one of the service bays, another employee backed a company pickup into claimant, severely injuring him.

Claimant filed a workers' compensation claim, which his employer denied. Claimant asked for a hearing. Before the hearing, the parties stipulated that riding motorcycles was not a function of claimant's job. They also stipulated that riding the motorcycle "served no business purpose, and the employer gained no benefit from [claimant's] riding of the motorcycle."

After considering the evidence, the administrative law judge (ALJ) ruled that claimant's injury arose out of and in the course of his work. *See* ORS 656.005(7)(a) (stating requirement for injury to be compensable). The ALJ reasoned that the injury "arose out of" the work because the risk of being hit by a moving vehicle was inherent in claimant's job.

---

[1] ORS 656.005(7)(b)(B) provides that a " '[c]ompensable injury' does not include * * * [an] [i]njury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure."

He also concluded that the injury occurred "in the course of" claimant's work because employer required its sales people to remain on the premises even when customers were not present.

The ALJ determined that ORS 656.005(7)(b)(B), which sets out an exclusion relating to certain recreational and social activities, did not preclude claimant's injury from being compensable. The ALJ reasoned that ORS 656.005(7)(b)(B) applies only when a worker's injury results from a recreational or social activity. The ALJ found that claimant's injury had not resulted from riding the motorcycle; rather, it had resulted from his coworker's failure to watch where he was going while driving the company pickup. Because ORS 656.005(7)(b)(B) did not render the injury noncompensable, the ALJ directed employer to accept claimant's workers' compensation claim.

The board reversed, relying on ORS 656.005(7)(b)(B). The board reasoned that, under the plain wording of that statute, the exclusion is not limited to injuries that occur "as the result of" engaging in recreational and social activities; it also applies to injuries that an employee incurs "while engaging in or performing" recreational or social activities. The board found that, in this case, claimant had been injured while he was engaged in a recreational activity—riding the motorcycle.

The board then turned to the question whether claimant had engaged in that activity "primarily for [his] personal pleasure." On that point, the board noted that claimant had "testified * * * that he enjoyed riding motorcycles and that there was no work-related reason for him to be riding the motorcycle at the time of the accident." The board found that, based on that evidence, claimant had been riding the motorcycle primarily for his own personal pleasure rather than for work-related reasons. The Court of Appeals affirmed the board's order for essentially the same reasons. *See Roberts*, 196 Or App at 417-19 (following board's reasoning).

On review, claimant argues that his "primary job (when not actively engaged in selling to a customer) was to be on the premises, available for customers." He notes that, even though he rode the motorcycle for his own pleasure,

"doing so did not take [him] away from his primary work function of being available for a customer [coming onto the lot]." (Emphasis omitted.) Claimant contends that both the board and the Court of Appeals failed to consider the nature of his work in deciding whether riding the motorcycle was only an incidental departure from his primary work activity.

ORS 656.005(7)(a) provides, as a general rule, that an injury will be compensable only if it "aris[es] out of and in the course of employment." ORS 656.005(7)(b)(B) states an additional limitation on compensable injuries. *See Andrews v. Tektronix, Inc.*, 323 Or 154, 161 n 1, 915 P2d 972 (1996) (explaining relationship between ORS 656.005(7)(a) and ORS 656.005(7)(b)(B)). It provides that a " '[c]ompensable injury' does not include * * * [an] [i]njury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure." ORS 656.005(7)(b)(B).

Textually, ORS 656.005(7)(b)(B) raises three questions. The first is whether the worker was engaged in or performing a "recreational or social activit[y]." The second is whether the worker incurred the injury "while engaging in or performing, or as the result of engaging in or performing," that activity. The final question is whether the worker engaged in or performed the activity "primarily for the worker's personal pleasure." If the answer to all those questions is "yes," then the worker cannot recover.

■ Regarding those issues, there is little dispute that, in the context of this case, riding the motorcycle was a "recreational activity."[2] Similarly, even though claimant's injury did not occur "as the result of" engaging in a recreational activity, it did occur, as the board found, "while engaging in * * * [that] recreational activity." The latter statutory phrase requires a temporal rather than a causal connection—a conclusion that follows both from the plain text of that phrase and from our obligation to give, if possible, each part of the

---

[2] To qualify as "recreational or social activities," an employee's action must be "recreational" or "social" and also an "activity." As the board found and the Court of Appeals explained, in the context of this case, riding a motorcycle was both "recreational" and an "activity." *See Roberts*, 196 Or App at 417-18 (discussing that issue).

statute meaning. *See Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004) (stating interpretative principle). The remaining question is whether claimant was engaged in that activity "primarily for [his] personal pleasure."

In analyzing that question, we begin with the text of that phrase and its context. As used in this context, the word "primarily" means "first of all: fundamentally, principally * * *." *Webster's Third New Int'l Dictionary* 1800 (unabridged ed 2002). As the legislature's use of the word "primarily" implies, a worker may engage in a recreational or social activity for reasons other than personal pleasure, and the board's task is to determine whether the worker's personal pleasure was the principal or fundamental reason for engaging in the activity. As the text also implies, in carrying out that task, the board should consider whether the worker was engaged in the activity primarily for the worker's personal pleasure or for work-related reasons.

A review of the legislative history confirms that that was the legislature's intent. In 1986, an interim House Task Force proposed, among other changes to the workers' compensation law, a provision that would reverse a Court of Appeals decision, *Beneficiaries of McBroom v. Chamber of Commerce*, 77 Or App 700, 713 P2d 1095, *rev den*, 301 Or 240 (1986). *See, e.g.*, Testimony, House Task Force on Occupational Disease, Oct 8, 1986, Ex G (statement of Ken Johnson) (stating that reason for provision). In *McBroom*, a salesperson attending a work-related conference in Los Angeles died, while intoxicated, in a hot tub. 77 Or App at 702. In deciding whether his widow had a compensable workers' compensation claim, the Court of Appeals began from the proposition that "traveling employees are considered to be within the scope of employment while away from home" and that injuries suffered during the course of those travels ordinarily will be compensable. *Id.* at 703 (internal quotation marks and citations omitted). The court recognized, however, that the injury would not be compensable if the worker injured himself while engaged in "a distinct departure on a personal errand." *Id.* (internal quotation marks and citation omitted). Because the Court of Appeals concluded that that

exception did not apply, it held that the death was compensable. *Id.* at 704.

In seeking to reverse that ruling, the task force drafted a bill that would have added the following provision to the workers' compensation statutes: An injury will not be compensable if the worker "incurred [it] while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities for the worker's personal pleasure." House Task Force on Occupational Disease, Oct 8, 1986, Ex A (Sept 9, 1986 draft bill).

Some members of the task force expressed concern over the breadth of the proposed exclusion. Representative Hooley observed that the exclusion could mean that "taking a recreational walk would disqualify certain work related claims automatically." Minutes, House Task Force on Occupational Disease, Oct 8, 1986, 30. Representative Kotulski stated that he shared Representative Hooley's concern and suggested adding the phrase "and not in any way connected with employment activities" after the word "pleasure." *Id.* Alternatively, Representative Kotulski suggested limiting the scope of the exclusion to recreational or social activities that the employer had not encouraged, while another representative proposed limiting the exclusion to recreational or social activities that lacked a "demonstrable relationship" with the employer's interests. *Id.*

Ultimately, the task force could not agree on a solution to the problem and submitted, during the next legislative session, a draft bill that contained the same wording that had caused its members concerns. *Id.*; *see* House Committee on Labor, HB 2271, Bill File (Nov 11, 1986 draft bill) (retaining same wording). At a hearing on that bill, a staff person for the House Labor Committee noted the task force's concern over the breadth of the proposed wording. Minutes, House Committee on Labor, HB 2271, Mar 25, 1987, 4. One committee member explained that the committee was not trying to prevent injuries from being compensable if the employer had benefitted from the recreational or social activity. Tape Recording, House Committee on Labor, HB 2271, Mar 25, 1987, Tape 69, Side B. A witness suggested adding the phrase "and of no benefit to the employer" after the word

"pleasure" to make that intent clear. *Id.* (statement of Jim Edmunson). However, Representative Kotulski objected that, "[i]f we added that, I think that we'd be opening up the whole hot tub case again." *Id.* After discussing the question, the committee decided not to amend that section of the bill, but the chair explained that the committee intended that the exclusion would apply to only those recreational and social activities "that *clearly* do not benefit the employer." *Id.* (statement of Representative Shiprack) (emphasis added).

The issue arose again when the bill reached the Senate Labor Committee. Senator Hill, the chair of the committee, proposed resolving it by adding the word "solely" before the phrase "for the worker's personal pleasure." Senator Hill explained his reasons for proposing the amendment:

> "My feeling on offering this amendment is to indicate that we're not talking about something that the worker may be engaged in which is actually a part or within the scope of employment. For instance, a working lunch in which the worker is eating and may find pleasure in the experience of eating salmon, or something, and may choke on a salmon bone and therefore incur a compensable injury. * * * What we're trying to get at are those recreational or social activities that are not part, that are not part of the work, that are performed solely for the worker's personal pleasure. And that would help clarify that."

Tape Recording, Senate Committee on Labor, HB 2271, June 8, 1987, Tape 201, Side A (statement of Senator Hill). The committee approved the amendment, and the legislature enacted the bill as amended.

In 1990, the legislature returned to the issue and substituted the word "primarily" for "solely" in ORS 656.005(7)(b)(B) (1987), *amended by* Or Laws 1990, ch 2, § 3. A proponent of that amendment testified that it

> "basically just cleans up something in the '87 legislature that you may recall, the hot tub case. It really just kind of cleans up the language, making that provision that was already enacted a little more meaningful."

Tape Recording, Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 7, Side B (statement of

Constance Wold). Although another witness opposed the amendment, the committee adopted it without further discussion, and the legislature enacted the bill.

As the legislative history confirms, the legislature intended that the board should determine both the degree to which a recreational or social activity serves the employer's work-related interests and the degree to which the worker engaged in the activity for the worker's personal pleasure. Only if the worker's personal pleasure was the fundamental or principal reason, in relation to work-related reasons, for engaging in the activity will the resulting injury be noncompensable.

■ With that standard in mind, we turn to the board's resolution of this case. As noted, claimant argues that his act of riding the motorcycle advanced a work-related interest (being available on the sales lot) as well as his own personal pleasure. In his view, the board erred in two respects: First, in not recognizing that his recreational activity served a work-related purpose and, second, in not finding that the work-related purpose was primary.[3]

Although there is evidence from which the board could have found that claimant's presence on the sales lot (even while riding the motorcycle) served a work-related purpose, there is also evidence from which the board could have drawn a different inference. For instance, claimant stipulated that "the riding of the motorcycle by [claimant] * * * served no business purpose, and the employer gained no benefit [from that activity]." Given that stipulation, we cannot say that substantial evidence does not support the board's finding that "there was no work-related reason for [claimant] to be riding the motorcycle at the time of the accident." *See Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990) (explaining substantial evidence standard). Substantial evidence also supports the board's finding that claimant

---

[3] Claimant also argues that any injury incurred during a recreational or social activity should be compensable if the activity involved only an incidental departure from work. In his view, only if the activity was a significant departure from work should an injury be noncompensable. Claimant does not identify a textual basis in ORS 656.005(7)(b)(B) for his proposed rule, and it appears to reinstate the exception to compensability that the Court of Appeals recognized in *McBroom* and that the legislature sought to narrow.

rode the motorcycle for his personal pleasure. Having made those findings, the board did not err in concluding that claimant engaged in the recreational activity primarily for his personal pleasure—that is, that the fundamental or principal reason that he rode the motorcycle was for his personal pleasure.

The decision of the Court of Appeals and the order of the Workers' Compensation Board are affirmed.

**DURHAM, J.**, concurring.

I join the majority's conclusion that the Workers' Compensation Board did not err in deciding that, in enacting ORS 656.005(7)(b)(B), the legislature has excluded claimant's injury from the scope of those injuries that are compensable under Oregon's Workers' Compensation Law, ORS 656.001 to 656.990.

Today's decision is the first from this court to interpret ORS 656.005(7)(b)(B) since the legislature adopted that provision in 1987. I write separately to discuss an additional, and perhaps unforeseen, consequence of ORS 656.005(7)(b)(B). Understandably, the majority opinion does not delve into that topic, because it is beyond the scope of this judicial review. However, if ORS 656.005(7)(b)(B), as presently drafted, potentially will produce an outcome that the legislature never anticipated and may not have desired, the legislature will benefit from prompt notice of that fact so that it might revisit the issue in the future.

In overview, Oregon's Workers' Compensation Law obligates every employer to qualify as either a carrier-insured employer or a self-insured employer and, thus, to maintain assurance that subject workers of the employer "will receive compensation for compensable injuries as provided by this chapter * * *." ORS 656.017(1). If an employer satisfies that obligation, then ORS 656.018 confines the employer's liability exclusively to the terms of the Workers' Compensation Law. ORS 656.018 provides, in part:

"(1)(a) *The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the*

*course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom,* specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter.

"* * * * *

"(2) *The rights given to a subject worker and the beneficiaries of the subject worker under this chapter for injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment are in lieu of any remedies they might otherwise have for such injuries, diseases, symptom complexes or similar conditions against the worker's employer under ORS 654.305 to 654.336 or other laws, common law or statute,* except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury, disease, symptom complex or similar condition.

"* * * * *

"(7) The exclusive remedy provisions and limitation on liability provisions of this chapter apply to all injuries and to diseases, symptom complexes or similar conditions of subject workers arising out of and in the course of employment *whether or not they are determined to be compensable under this chapter.*"

(Emphasis added.)

The provisions emphasized above make it clear that the injured worker's statutory right to compensation turns on whether the worker has suffered a "compensable injury." However, those statutes also create an employer immunity from worker claims (other than those grounded in or authorized by the Workers' Compensation Law) that is not linked to the compensability of the underlying injury. ORS 656.018(2) declares that the claimant's statutory right to benefits is "in lieu of" other remedies for injuries or diseases that arise out of and in the course of employment. ORS 656.018(7) provides that the statutory compensation remedy is the injured worker's exclusive remedy for all injuries arising out of and in

the course of employment *regardless of the compensability of the injury*.

ORS 656.005(7)(a) defines "compensable injury" as "an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death * * *[,]" subject to certain limitations for consequential and combined conditions.[1] However, ORS 656.005(7)(b)(B) declares that certain injuries from "recreational or social activities" are not "compensable" injuries. That subsection, which is the interpretive focal point of this case, provides:

"(b) 'Compensable injury' does not include:

"* * * * *

"(B) Injury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure * * *."

As the majority correctly points out, the legislature incorporated into that statutory provision alternative bases for excluding recreational or social activity injuries. First, that provision excludes injuries that are the *result* of engaging in or performing any recreational or social activities primarily for the worker's personal pleasure. The term "result," in context, incorporates the familiar concept of legal causation as a requirement for exclusion. Thus, that prong of the provision excludes an injury from compensability only if the recreational or social activity *caused* the injury.

In addition, ORS 656.005(7)(b)(B) excludes from compensability any injury incurred *while* engaging in or performing any recreational or social activities primarily for the worker's personal pleasure. The majority correctly infers from the text of that prong of the statutory provision that the

---

[1] Oregon law defines "occupational disease" in part as "any disease or infection arising out of and in the course of employment * * *[,]" ORS 656.802(1)(a), and considers an occupational disease "an injury for employees of employers who have come under this chapter * * *[']" subject to certain requirements that pertain to occupational disease claims, ORS 656.804. Consequently, the rules that govern whether a worker's compensation remedy for an injury is an exclusive remedy apply with equal force to an occupational disease.

legislature did not intend that text to incorporate a requirement of legal causation. Reading in another causation requirement would create a needless redundancy: The first prong of the provision, discussed above, excludes from compensability any injury that a recreational or social activity causes. To accord interpretive significance to the legislature's use of the term "while," the majority correctly reads that term to exclude an injury from compensability if there is a *temporal coincidence* between the injury and a recreational or social activity. Thus, the statutory provision excludes from compensability any injury that occurs *at the same time* that the employee engages in or performs a recreational or social activity, even if the injury arises out of and in the course of employment and the sole source of the risk of injury is the workplace.

The legislature's exclusion based on a temporal coincidence between the injury and the employee's recreational or social activity renders claimant's injury noncompensable. Here, the immediate cause of claimant's injury was the errant driving behavior of a coworker—a classic work-related risk—not carelessness by claimant in operating a motorcycle. Nonetheless, ORS 656.005(7)(b)(B) renders the injury noncompensable because it occurred *while* claimant was engaged in the recreational activity of attempting to park a motorcycle. The facts that claimant simultaneously was carrying out his work assignment, *i.e.*, waiting on the employer's lot for customers to arrive, and was paid for his time, are immaterial. The principal relevant fact is the temporal coincidence between claimant's injury and the recreational or social activity in which he was engaged.

ORS 656.005(7)(b)(B) will pose interpretive problems for the board and the courts in the future. The scope of the phrase "recreational or social activities" is one potential source of difficulty. Do the terms "recreational" and "social," as modifiers of "activities," refer to a set of organized activities, behaviors or events, or do they instead describe the employee's motive in engaging in a broad range of actions at work, whether alone or with others, that are not purely work assignments?

The phrase "primarily for the worker's personal pleasure" necessarily invites litigation over the employee's state of mind in engaging in or performing recreational or social activities. That will be true even if the activity is one that the employer has assigned to the worker as part of the job. Does the statute render an injury noncompensable if the worker incurred it while engaged in an employer-mandated recreational activity that the worker was only too happy to perform (*e.g.*, testing an employer's camping products while backpacking in a scenic wilderness)?

The most significant consequence of the enactment of ORS 656.005(7)(b)(B) will not be the sorts of interpretive difficulties to which I have alluded and which the board and the courts will address in due time. Rather, it is in respect to the tort law ramifications of (1) the legislature's categorical exclusion of a class of work-related injuries from the scope of "compensable" injuries under the Workers' Compensation Law; and (2) the restriction of the worker's remedy for a work-related injury to that set out in the Workers' Compensation Law whether or not the injury is compensable.

In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), this court held that Article I, section 10, of the Oregon Constitution limits the authority of the Oregon legislature to restrict a worker's right to seek a remedy by due course of law for injuries resulting from another person's negligence in the workplace.[2] In that case, the claimant had developed an occupational disease in his lungs due to the use of harsh chemicals in the workplace. The employer denied his claim for compensation, and an administrative law judge upheld the denial, because the claimant had failed to prove that the workplace was the major contributing cause of the disease, as the Occupational Disease Law, ORS 656.802 to 656.807, required. *Id.* at 87.

The worker brought an action in court against the employer for negligence. The employer argued that, even if the worker had suffered a work-related injury but could not

---

[2] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

receive compensation, the statutes sheltered the employer from tort litigation by restricting the worker to the remedies provided in the workers' compensation system whether or not the injury was compensable.

On appeal, this court determined that the employer had interpreted the statutes correctly. However, this court concluded that the statutes had left the worker with no remedy for his work-related illness. Because the worker's illness was an injury respecting the "person," in the constitutional sense, for which the common law had afforded a remedy, this court held that Article I, section 10, deprived the legislature of the authority to deny a remedy to the worker. *Id.* at 135-36. This court stated that:

> "[t]he exclusive remedy provisions of ORS 656.018 (1995) are unconstitutional under the remedy clause, because they leave the worker with no process through which to seek redress for an injury for which a cause of action existed at common law."

*Id.* at 135. The court remanded the worker's negligence claim to the trial court for further proceedings.

The legislature's policy choice with respect to a worker's injury incurred during recreational or social activities is analogous to the policy choice addressed in *Smothers* regarding injuries or diseases for which the workplace is less than the major contributing cause. The legislature has declared that injuries incurred as the result of, or while, performing recreational or social activities are not compensable. Yet the legislature also has declared that the remedies in the Workers' Compensation Law are claimant's exclusive remedy for injuries and diseases arising out of and in the course of employment whether or not those injuries and diseases are compensable. Like the occupational disease in *Smothers*, claimant's injury arose out of and in the course of employment. In net terms, the legislature has attempted to exclude claimant's injury from compensability and to preclude claimant from recovering any remedy in any other forum.

There is little doubt that claimant suffered an injury to his "person," in the constitutional sense, when the coworker drove into him. It is also clear that, at common law,

the employer was exposed to liability if he failed to provide a reasonably safe place in which to work, such as by hiring incompetent workers who exposed other workers to dangerous conditions in the workplace.[3]

The foregoing discussion compels the conclusion that, under the logic of *Smothers*, the legislature cannot exclude claimant's injury from compensability under the Workers' Compensation Law and, at the same time, preclude claimant from resorting to another forum, such as Oregon's courts, to obtain a remedy for his workplace injury. The remedy clause in Article I, section 10,

> "mandates that a remedy be available to all persons—including workers—for injuries to 'absolute' common-law rights for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857."

*Smothers*, 332 Or at 136.

Therefore, the combined effect of ORS 656.005(7)(b)(B) and ORS 656.018(1)(a), (2), and (7) now leaves employers exposed to liability in tort to workers for injuries that result from or occur during recreational or social activities and that arise out of and in the course of employment. Whether the legislature intended that consequence is beside the point; it is nonetheless the predicable outcome of an examination of the legislature's statutory policy choices in light of the legal principle that Article I, section 10, embodies. The question whether to alter the policy choice reflected in any of the statutes discussed above is for the legislature to decide.[4]

I concur.

Riggs, J., joins in this concurring opinion.

---

[3] In *Smothers*, this court analyzed *Anderson v. Bennett*, 16 Or 515, 19 P 765 (1888), in which the plaintiff suffered blindness when his supervisor negligently ordered the plaintiff to drill a hole in some rock, causing an explosion. The court held that the employer was exposed to liability for failure to make reasonable provision for the plaintiff's safety in the workplace. *Smothers* noted that that rule was a part of the common law in Oregon at the time of the adoption of the state constitution in 1857. *Smothers*, 332 Or at 131.

[4] Since this court decided *Smothers* in 2001, the legislature has made no change to the exclusive remedy policy stated in ORS 656.018(7).