Argued and submitted May 14, reversed and remanded November 18, 2009

In the Matter of the Compensation of
Theresa A. Noble, Claimant.

LEGACY HEALTH SYSTEMS
& LEGACY HEALTH SYSTEM,
*Petitioners,*

*v.*

Theresa A. NOBLE,
*Respondent.*

Workers' Compensation Board
0702423; A138671

221 P3d 180

Deborah L. Sather argued the cause for petitioners. With her on the briefs were Rebecca A. Watkins and Sather, Byerly & Holloway.

James O. Marsh argued the cause for respondent. With him on the brief was Carney, Buckley, Hays, Marsh & Gibson.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

While walking to a credit union to deposit a personal check during a paid break from work, claimant slipped on ice and fractured her right ankle. The Workers' Compensation Board (the board) determined that, because claimant's errand was not a recreational or social activity performed primarily for her personal pleasure, and because claimant's employer controlled the parking lot where the fall occurred, the injury was sufficiently work-related to be compensable. Legacy Health Systems, the self-insured employer, seeks judicial review. We agree that claimant's injury did not occur during a social or recreational activity and that it occurred "in the course of" employment, but, because the board failed to determine whether the injury arose "out of" claimant's employment, we reverse and remand.

The following facts are undisputed. During a paid morning break from her work as a patient care coordinator at employer's hospital in northwest Portland, claimant decided to deposit a personal check at a credit union located at a different part of employer's campus. She left the hospital, crossed a street, and started to cut across a parking lot. While in the lot, she slipped on ice and fell, fracturing her right ankle. Another hospital employee, entering the lot to park her car, found claimant and came to her assistance. A hospital security guard arrived and filled out an incident report, and an ambulance took claimant to the emergency room.

Claimant filed a workers' compensation claim with employer, and employer denied it on the ground that the injury did not arise out of and in the course of employment. ORS 656.005(7)(a). Claimant requested a hearing. The administrative law judge (ALJ) determined that the injury was compensable and reversed the denial. The ALJ concluded, in part, as follows:

> "At the outset, I do not agree with the employer's argument that claimant was engaged in a recreational activity primarily for her personal pleasure. I do not believe that visiting a credit union is a 'recreational' activity primarily for her personal pleasure. I do not believe that this is the type of activity contemplated by the statute. ORS 656.005(7)(b)(B) does not apply.

"\* \* \* \* \*

"I conclude that \* \* \* the going and coming rule and the parking lot exception to that rule should be applied.

"Generally, under the 'going and coming rule,' injuries sustained while going to or coming from the workplace are not compensable. However, an exception to the 'going and coming' rule is the 'parking lot rule.' Under that exception, when an employee traveling to or from work sustains an injury 'on or near' the employer's premises, the 'in the course of' portion of the work-connection test may be satisfied if 'the employer exercises some "control" over the place where the injury is sustained.'

"In this case, claimant was going to the credit union on the employer's campus on her paid break and was crossing a parking lot used by the employer when she slipped on ice and fell sustaining an injury. A security guard employed by the employer responded and filled out an incident report. This fact establishes that the lot where claimant fell was controlled by the employer. Under the circumstances presented here, I conclude that claimant's injuries arose out of the course and scope of her employment. In this regard, when claimant's injuries occurred, she was in the course of her employment and was taking her paid break. She was injured by a hazard (ice) on an employer controlled area of the employer's campus. Claimant was permitted to stay on the employer's campus during her paid break and was allowed to go to the credit union at the employer's facilities. Under such circumstances, I find that claimant's injury arose out of and in the course and scope of her employment."

(Citations omitted.) The ALJ noted, "Based on her demeanor at the hearing, I had no reason to question claimant's credibility."

The board affirmed the ALJ's order with supplemental findings. In particular, the board noted that the "parking lot" rule applied and that "there is sufficient evidence that claimant was injured on the employer's premises." Employer seeks judicial review.

■ To be compensable, an injury must "aris[e] out of and in the course of employment," ORS 656.005(7)(a), a

two-part requirement often referred to as the "unitary work-connection inquiry." An injury must satisfy both requirements, although "the work-connection test may be satisfied if the factors supporting one prong are minimal while the factors supporting the other prong are many." *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 531, 919 P2d 465 (1996) (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983)). To occur "in the course of" employment, "the time, place, and circumstances of the injury [must] justify connecting the injury to the employment." *Robinson v. Nabisco, Inc.*, 331 Or 178, 186, 11 P3d 1286 (2000). To satisfy the "arising out of" employment prong, there must be "some causal link" between the injury and the employment. *Krushwitz*, 323 Or at 525-26. That link exists if employment exposes the worker to some risk from which the injury originates. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997).

Before determining whether an injury meets the primary requirement for compensability that is captured in the "arising out of and in the course of employment" test, however, we must address a prior question. ORS 656.005(7)(b)(B) categorically excludes from coverage any injury resulting from a social or recreational activity that a worker was engaged in primarily for the worker's personal pleasure. "[O]nly after we have concluded that an injury was not suffered while engaging in a recreational or social activity primarily for the worker's personal pleasure do we consider whether the injury arose out of and in the course of the employment." *Roberts v. SAIF*, 196 Or App 414, 417, 102 P3d 752 (2004), *aff'd*, 341 Or 48, 136 P3d 1105 (2006) (citing *Liberty Northwest Ins. Corp. v. Nichols*, 186 Or App 664, 667, 64 P3d 1152 (2003)).

We therefore begin with that prior inquiry. In *Roberts*, 341 Or at 52, the Supreme Court explained that the inquiry involves a three-step analysis:

"Textually, ORS 656.005(7)(b)(B) raises three questions. The first is whether the worker was engaged in or performing a 'recreational or social activit[y].' The second is whether the worker incurred the injury 'while engaging in

or performing, or as the result of engaging in or performing,' that activity. The final question is whether the worker engaged in or performed the activity 'primarily for the worker's personal pleasure.' If the answer to all those questions is 'yes,' then the worker cannot recover."

The phrase "recreational or social activities" is not defined by statute or rule. Employer concedes that claimant was not engaged in a "social" activity, and we agree; she was walking alone, from a workstation, to her credit union. For purposes of ORS 656.005(7)(b)(B), we previously adopted the dictionary definition of "recreation": " 'the act of recreating or state of being recreated : refreshment of the strength and spirits after toil : DIVERSION, PLAY * * * a means of getting diversion or entertainment * * *[.]' " *Roberts*, 196 Or App at 418 (quoting *Webster's Third New Int'l Dictionary* 1899 (unabridged ed 1993)). Here, as noted, the board confirmed the ALJ's conclusion that walking to a credit union to deposit a check is not the type of activity contemplated by ORS 656.005(7)(b)(B). We agree. As the Supreme Court has explained, the exclusion for "recreational or social activities" was a legislative reaction to *Beneficiaries of McBroom v. Chamber of Commerce*, 77 Or App 700, 713 P2d 1095, *rev den*, 301 Or 240 (1986), a case in which this court found compensable the death of a travelling salesman who, on a business trip to Los Angeles, became extremely inebriated and drowned in his hotel's hot tub. *Roberts*, 341 Or at 53. Further, we have noted that the typical "recreational activity" case involves "off-the-job group recreational or social activities such as picnics, office parties, or organized or spontaneous sports or games." *Roberts*, 196 Or App at 416 (citing cases).

Claimant's activity in the present case does not fit the established definition, nor is it the kind of activity that we have previously recognized as "recreational." Claimant was walking to the bank, while on the clock; by no stretch of the imagination can we conclude that she was refreshing her strength and spirits after toil or engaged in play, diversion, or entertainment. *Id.* at 418. Nor does walking to the bank to deposit a check bear any kind of relationship to soaking in a hot tub, picnicking, or engaging in a game or sport. It is true that walking can, in some circumstances, be social (a group hike), refreshing to the spirit after toil (a stroll along the river

after work on a warm spring day), or a sport (a 10-kilometer walk race). The ALJ, however, found that, when claimant walked toward the credit union in this case, she was not engaged in refreshment of strength and spirit after toil, or in diversion or play. The board agreed. Substantial evidence supports that finding.[1] In response to questions regarding the purpose of her errand, claimant testified only that she wanted to perform personal banking business.

We therefore turn to the question whether claimant's injury arose out of and in the course of her employment. To occur "in the course of" employment, "the time, place, and circumstances of the injury [must] justify connecting the injury to the employment." *Robinson*, 331 Or at 186. Injuries sustained while an employee is going to or coming from the place of employment generally do not occur within the course of employment. *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). The "parking lot" rule, however, provides one exception: An injury sustained on premises controlled by the employer while an employee is coming to or going from work occurs within the "course of employment." *Id.* at 367. Further, we held in *Hearthstone Manor v. Stuart*, 192 Or App 153, 158, 84 P3d 208 (2004), that we could discern no reason to distinguish, for purposes of the parking lot rule, between a worker's injury while going to or coming from work at the beginning or end of the work day, on the one hand, and an injury incurred while going to or coming from lunch, on the other. Likewise, we see no distinction between lunch and a break. Further, we find no significance to the fact that, in *Hearthstone Manor*, the worker was injured during an unpaid period, while in the present case claimant was "on the clock." The parking lot rule, after all, is one way of measuring the extent to which an injury occurs in the course of employment. The fact that the injury in this case occurred

---

[1] Under the three-part analysis mandated by *Roberts*, 341 Or at 52, the abstract nature of the activity presents a question (social or recreational?) that is distinct from the actor's state of mind while acting (primarily for the claimant's personal pleasure?). As this case demonstrates, the two inquiries are not easily separated. Our determination—walking may be recreational or not, depending on the circumstances, and under the circumstances here it was not—could equally be presented as a determination that claimant's activity was for claimant's business and not primarily for her personal pleasure.

during a paid break actually makes the work connection in this case *stronger* than the one in *Hearthstone Manor*.

■        Thus, if claimant was injured in a place over which employer exercised some control, the injury meets the criteria for the parking lot exception. The board expressly found that employer exercised control over the parking lot. Employer makes a one-sentence assertion that the finding is not supported by substantial evidence. We disagree. Claimant testified that she believed the lot was owned and controlled by employer. After she fell, she was assisted by another of employer's workers who was using the lot to park her car. Employer's security guard came to claimant's aid. And, most significantly, employer offered no evidence suggesting that it did *not* control the lot. We therefore conclude that claimant met her burden of establishing that she was injured while leaving work on a break in a parking lot controlled by employer. The injury therefore occurred in the course of employment.

■        However, to prove compensability, a claimant must establish both parts of the unitary work-connection test, including whether the injury arose "out of" the employment. An

> "employer * * * is not liable for any and all injuries to its employe[es] irrespective of their cause, and the fact that an employe[e] is injured on the premises during working hours does not of itself establish a compensable injury. The employe[e] must show a causal link between the occurrence of the injury and a risk connected with his or her employment."

*Phil A. Livesley Co.*, 296 Or at 29. Employer argues that neither the ALJ nor the board addressed the "arising out of" aspect of the work-connection test. We agree. Nothing in either opinion deals with that question, either directly or by implication. For that reason, we reverse and remand the case to the board for further proceedings.

Reversed and remanded.