Argued and submitted May 18, 2011, reversed June 27, petition for review denied
December 27, 2012 (353 Or 127)

In the Matter of the Compensation of
Theresa A. Noble, Claimant.

LEGACY HEALTH SYSTEMS,
*Petitioner,*

*v.*

Theresa A. NOBLE,
*Respondent.*

Workers' Compensation Board
0702423; A145784

283 P3d 924

Jerald P. Keene argued the cause and filed the briefs for petitioner.

James O. Marsh argued the cause for respondent. With him on the brief was Carney, Buckley, Hays & Marsh.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Employer seeks review of a Workers' Compensation Board (board) order awarding compensation for an injury that claimant suffered when, during a paid break, she slipped and fell in an employer-owned parking lot while walking from her workplace to a credit union to deposit a personal check. This case is before us for the second time. In *Legacy Health Systems v. Noble*, 232 Or App 93, 100, 221 P3d 180 (2009) (*Noble I*), we held that the injury occurred "in the course of" claimant's employment; however, we reversed and remanded for the board to determine whether the injury "arose out of" claimant's employment. ORS 656.005(7)(a).[1] On remand, the board concluded that claimant's injury did arise out of her employment and, thus, that claimant's injury was compensable. We conclude, on review, that claimant's injury did not arise out of her employment because neither claimant's work nor her work environment exposed her to the risk of the injury that she suffered.[2] Accordingly, we reverse.

The material facts are undisputed. Claimant was a patient-care coordinator, who "managed the desk and the day-to-day operations in the short-stay unit" at employer's Legacy Good Samaritan Medical Center in northwest Portland. On the morning of February 21, 2007, claimant decided to walk from the hospital to her nearby credit union to deposit a personal check during a paid 15-minute break. Claimant's purpose was purely personal—she was not going to the credit union for any work-related purpose.

To that end, claimant, while on her paid break from work, left her desk and walked out the front door of the hospital on NW 22nd Avenue near NW Marshall Street. She then crossed NW 22nd Avenue and continued past the intersection with NW Northrup Street and then, as the most direct route to the credit union (which was located on NW Overton Street), started to cut across a parking lot. That

---

[1] ORS 656.005(7)(a) provides, in part, "A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death[.]"

[2] Because the relevant facts are undisputed, we review for errors of law. ORS 656.298(7); ORS 183.482; *Sandberg v. JC Penney Co. Inc.*, 243 Or App 342, 347, 260 P3d 495 (2011).

parking lot was owned and controlled by employer and associated with employer's Green Gable House, a facility, separate from the hospital, that serves families of cancer clinic patients. Claimant did not work in the Green Gable House; nor did she park her car in that parking lot. As claimant crossed the parking lot, she slipped on a slick surface, fell, and fractured her ankle.

The board, in its original order, which was the object of review in *Noble I*, determined that claimant's injuries were compensable. In doing so, the board applied the "parking lot" rule and determined, *inter alia*, that "there is sufficient evidence that claimant was injured on the employer's premises." *Noble I*, 232 Or App at 96 (internal quotation marks omitted). On judicial review in *Noble I*, we sustained the board's determination that, because claimant had been injured in a parking lot over which employer had control, the circumstances fell within the "parking lot" exception to the general principle that injuries sustained while going to or coming from the place of employment are not compensable—and that, in turn, established that claimant's injuries had occurred "in the course of employment." *Id.* at 100. However, that alone was legally insufficient to establish compensability under the unitary work-connection test, which (as amplified below) requires a claimant to prove not only that the injury occurred in the course of employment, but also that the injury arose out of the claimant's employment. *Id.* Because we agreed with the employer that the board (and the administrative law judge) had failed to address the conjunctive "arising out of" inquiry, we reversed and remanded for it to do so. *Id.*

On remand, the board reiterated its determination of compensability, determining that claimant's injury had arisen out of her work. The gravamen of the board's reasoning in that regard was (1) claimant's "fall was caused by a hazard" (slippery conditions) "associated with the employer's premises" (the parking lot); (2) because claimant's "route" to the credit union "began at her desk" and she took "the most direct route from her workplace to the credit union," her fall "occurred during normal egress from work"; and (3) employer "had acquiesced" in claimant's activity during her personal break.

Employer again seeks judicial review, challenging the board's "arising out of" determination as being erroneous as a matter of law. While deconstructing and disputing the correctness of specific aspects of the board's analysis—*e.g.*, "normal egress" and "acquiescence"—the overarching theme of employer's challenge is as follows:

> "Not every risk encountered while in the course of employment is an 'employment risk.' Under the specific circumstances of this case, claimant's injury resulted from a risk originated by her pursuit of a personal errand while in the course of her employment. The fact that it occurred on a parking lot controlled by the employer in connection with a different workplace was merely coincidental. *Because it resulted from a 'personal risk' (or at most a 'neutral risk') to which her employment did not expose her, claimant's injury did not 'arise out of employment' as required to qualify for worker's compensation benefits.*"

(Citations omitted; emphasis added.)

Claimant remonstrates that consideration of the personal, non-work-related nature of her errand is subsumed within the "in the course of" inquiry and has been concluded by the board's original determination in that regard and by that aspect of *Noble I* that sustained that determination. Beyond that—and beyond reiterating facets of the board's reasoning—claimant emphasizes that compensability can be based on only a slight showing as to "arising out of" if (as claimant urges is true here) the "in the course of" component is very strong.

We agree with employer that the uncontroverted circumstances of claimant's injury are legally insufficient to support a determination of compensability under the unitary work-connection test. We so conclude because, as we will try to explain, the application of that test, in its sometimes arcane particulars, cannot, and must not, be divorced from its overarching purpose—and, indeed, the overarching purpose of the workers' compensation statutes. By way of foreshadowing our essential reasoning, to which we will return, we posit the following hypothetical, a variant of which we posed during the oral argument in this case:

"A," an employee of a business owned by an employer in one part of a city, has a one-hour lunch break, during which A is not subject to employer's direction and control, and is free to do anything she chooses. One day, A decides to deliver her rent check, during her lunch break, to her property manager who, coincidentally, works at another of the employer's establishments on the other side of the city. A (who, of course, intends to return to work after her break) drives across the city, on public streets, and parks in the parking lot of the employer's establishment where the property manager works. As A walks from her car to the front door, she slips on ice and is injured.

Is A's injury compensable in workers' compensation as connected to her work? What meaningful purpose, relating to the fundamental purposes of the workers' compensation statutes, would be served by such a result—as opposed to consigning/permitting A to pursue an action and remedy in tort? Our hypothetical is, ultimately, materially indistinguishable from this case.

We turn to the applicable legal principles. A claimant bears the burden of establishing the compensability of his or her injury—and, specifically, the requisite connection between the injury and his or her employment. *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29, 672 P2d 337 (1983). "A 'compensable injury' is an accidental injury * * * arising out of *and* in the course of employment." ORS 656.005(7)(a) (emphasis added). That is, both conjunctive statutory elements must be met. In determining whether an injury occurs "in the course of" employment, we look at the time, place, and circumstances of the injury. *Robinson v. Nabisco, Inc.*, 331 Or 178, 186, 11 P3d 1286 (2000). The "arising out of" prong refers to the causal link—the causal nexus—between the injury and the employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996). "[A] worker's injury is deemed to 'arise out of' employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker." *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997). As noted, both prongs of the "unitary work-connection test" must be met to some degree. *Krushwitz*, 323 Or at 531. Nevertheless, the test may be satisfied, even if the factors supporting one prong are weak, if

those supporting the other are strong. *Redman Industries, Inc. v. Lang,* 326 Or 32, 35, 943 P2d 208 (1997).

The Supreme Court has "repeatedly cautioned that the reading of other decisions is normally of little assistance when this issue is presented and that each case must be decided on its own particular facts." *Wallace v. Green Thumb, Inc.,* 296 Or 79, 81, 672 P2d 344 (1983) (internal quotation marks omitted). That is so because, as a practical matter, some overlap between the facts and circumstances pertaining to the two prongs may be unavoidable and because the ultimate determination is functional, predicated on practical reference to the purpose of the workers' compensation statutes. Thus, our decisions—and, for the most part, decisions of our Supreme Court—addressing compensability may provide useful points of departure and guidance, but they do not impose methodological straightjackets. *See Robinson,* 331 Or at 185 ("[T]he unitary work-connection test does not supply a mechanical formula for determining whether an injury is compensable."). Rather, as we explained 35 years ago in *Allen v. SAIF,* 29 Or App 631, 633-34, 564 P2d 1086 (1977):

> "The statutory phrase 'arising out of and in the course of employment' must be applied in each case so as to best effectuate the socio-economic purpose of the Workers' Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. 1 Larson, Workmen's Compensation Law § 2.20. Various concepts have arisen from attempts to rationalize that purpose, e.g., the going and coming rule, special errands, lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, etc. Each is helpful for conceptualization and indexing, but there is no formula for decision. Rather, in each case, every pertinent factor must be considered as a part of the whole. It is the basic purpose of the Act which gives weight to particular facts and direction to the analysis of whether an injury arises out of and in the course of employment."

(Citation omitted.) *See also Robinson,* 331 Or at 185-86 (quoting the above-quoted language with approval); *Hayes,* 325 Or at 597 n 9 (same); *Rogers v. SAIF,* 289 Or 633, 642-43, 616 P2d 485 (1980) (same).

Consistently with those functional premises, the determination of whether a claimant's injury arose out of his or her employment depends on an assessment of the nature of the claimant's work and work environment in conjunction with the risk of harm that resulted in the injury. As we explained in *Sandberg v. JC Penney Co. Inc.*, 243 Or App 342, 347, 260 P3d 495 (2011), "our focus is on whether claimant established a causal connection between her injury and her employment, that is, *whether claimant's injury resulted from a risk connected to either the nature of her work or her work environment.*" (Emphasis added.) That assessment, in turn, implicates categorization of the risk and, specifically, the classic, albeit stilted, tripartite taxonomy:

> "Risks distinctly associated with the employment are universally compensable; risks personal to the claimant are universally noncompensable; and neutral risks are compensable if the conditions of employment put claimant in a position to be injured."

*Panpat v. Owens-Brockway Glass Container*, 334 Or 342, 349-50, 49 P3d 773 (2002) (internal quotation marks omitted).

The parties have vigorously disputed the proper categorization of the risk—*viz.*, the slippery conditions in the Green Gable House parking lot that was under employer's control—that caused claimant's injury. Claimant especially invokes *Hayes* in contending that the injury-producing risk was distinctly associated with her employment, while employer contends that various "personal errand"-related decisions[3] afford superior guidance on the correct understanding of the operative causal risk.

Even as we are mindful of *Wallace*'s admonition against case-matching, we begin by "clearing the decks" of *Hayes*. In *Hayes*, the Supreme Court concluded that the claimant's injury originated from an employment-related risk. There, the claimant, a retail department manager, was

---

[3] *See, e.g., Allbee v. SAIF*, 45 Or App 1027, 1030, 609 P2d 920 (1980) (the claimant's injuries were not compensable because he was "on a personal mission" to attach snow chains to his car in an icy parking lot); *see also J A K Pizza, Inc. - Domino's v. Gibson*, 211 Or App 203, 154 P3d 159 (2007) (examining the distinction between a compensable "special errand" and noncompensable personal errand).

attacked and stabbed by a stranger as she was returning to her car in the employer's store parking lot at the end of her shift. 325 Or at 595. The employer had directed her to park on the poorly lit perimeter of the parking lot. *Id.* In concluding that the injuries arose out of the claimant's employment, the court emphasized that "her employer required her to park at the fringes of the parking lot in an area that was not well lit" and that those factors "made claimant vulnerable to an attack and created the risk that such an attack would occur." *Id.* at 601-02 (internal quotation marks omitted). Here, of course, there is absolutely no evidence that employer directed claimant to do anything during her paid break, much less required her to follow a specific route, across the employer-owned parking lot, to the credit union. *Hayes* is patently distinguishable.

We return to and reiterate the dispositive principle: The "arising out of" prong is satisfied only if the claimant's injury is the product of either (1) "a risk connected with the nature of the work" or (2) "a risk to which the work environment exposed claimant." *Redman Industries, Inc.*, 326 Or at 36; *see also Sandberg*, 243 Or App at 348 ("[T]o arise out of employment, an injury must result from a risk connected with the nature of the work or a risk connected with the work environment.").

The circumstances here did not meet either of those alternative formulations. Nothing in the "*nature* of [claimant's] work" as a patient-care coordinator, whose work activities were confined to the hospital, bore any causal connection to suffering an ankle injury while walking across a slippery parking lot to deposit a personal check.

Nor did claimant's "work environment" expose claimant to a risk of the injury that she suffered. To be sure, employer did own and control the premises, the parking lot where claimant was injured. But that alone is insufficient because the Green Gable House parking lot had no (for lack of a better term) "environmental" nexus to claimant's work. *See Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 369, 867 P2d 1373 (1994) ("[T]he mere fact that an injury occurs in a parking lot that is owned and maintained by an employer when

an employee is going to and coming from the employee's regular place of employment does not, in and of itself, establish compensability. Claimant's injury must also 'arise out of' the employment, *i.e.,* some causal connection must be demonstrated."). Claimant did not use that lot to park her own car there—and there is no suggestion in the record that that lot was used by hospital personnel. Thus—as in our "foreshadowing" hypothetical—claimant's employment was causally immaterial to the injury that she suffered. The board, accordingly, erred in concluding that claimant's injury arose out of her employment.

Reversed.